UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
JUN 15  3 40 PM '01

| | |
|---|---|
| PROGRESS SOFTWARE CORPORATION and NUSPHERE CORPORATION,<br><br>Plaintiffs,<br><br>-versus-<br><br>MYSQL AB, T.C.X DATAKONSULT AB, DAVID AXMARK, MICHAEL WIDENIUS, and JOHN DOE CORPORATION,<br><br>Defendants. | Civil Action No.<br><br>01-11031 PBS<br><br>RECEIPT # 31787<br>AMOUNT $ 150.00<br>SUMMONS ISS. YES<br>LOCAL RULE 4.1 ____<br>WAIVER OF SERV. ____<br>MCF ISSUED ____<br>AO 120 OR 121 ____<br>BY DPTY CLK ES<br>DATE 6/15/01 |

## COMPLAINT

Plaintiffs PROGRESS SOFTWARE CORPORATION ("Progress") and NUSPHERE CORPORATION ("NuSphere"), by their undersigned counsel BROWN RAYSMAN MILLSTEIN FELDER & STEINER LLP, as and for their Complaint against defendants MYSQL AB ("MySQL"), T.C.X DATAKONSULT AB ("TCX"), DAVID AXMARK ("Axmark"), MICHAEL WIDENIUS ("Widenius"), and JOHN DOE CORPORATION, allege as follows:

### NATURE OF THE ACTION

1. By this action, plaintiffs, a Massachusetts computer software company and its subsidiary, seek redress for the breach of contract, tortious interference with third party contracts and relationships, and unfair competition by defendants, a Swedish company and its principals and affiliates. Plaintiffs further seek declaratory judgment as to their trademark rights and other rights related and critical to plaintiffs' business which include packaging and supporting defendants' version of MySQL computer code ("MySQL Code"). These rights were addressed in the June 21, 2000 agreement between the parties (the "MySQL Agreement").



2. Pursuant to the MySQL Agreement, and in exchange for the payment of $312,501, defendants undertook certain obligations critical to plaintiffs' launch of their new business venture. Among other things, defendants agreed to release the MySQL Code under what is known as a General Public License ("GPL"), sometimes referred to as "open source," so that the Code would be generally available to the public as described in greater detail herein. The Agreement contemplated that plaintiffs would provide support for the open-sourced MySQL Code and provide a packaged product based on the Code, which would benefit defendants by expanding the market for the MySQL Code and giving it credibility. The Agreement provided plaintiffs with specific rights necessary to launching this MySQL-related venture. At issue here are plaintiffs' rights to sell and distribute packaged products based on the MySQL Code, rights to printed documentation related to the Code, and, significantly, certain trademark rights, including the right to register and use certain combination trademarks including "NuSphere MySQL," "Enhanced MySQL" and "Rocket MySQL" (collectively, the "MySQL Combination Marks"). Plaintiffs, in reliance upon the Agreement, have committed and expended many millions of dollars in carrying out its business plan for its newly-created MySQL-related venture.

3. The Agreement also contemplated that the parties would continue negotiations for a potential alliance of the corporate entities in the future, but did not require that any such alliance be created. To date, no such alliance has been struck. Indeed, it has become apparent that defendants intend to compete with plaintiffs and to do so unfairly.

4. As set forth herein, defendants have breached the Agreement by purporting to register one or more of the MySQL Combination Marks, and by attempting to cripple plaintiffs' ability to carry out its business objectives of packaging and supporting products that relate to the MySQL Code. In doing so, Defendants have acted with malicious intent and in

flagrant disregard of their express obligations as well as their obligations of good faith and fair dealing.

## THE PARTIES

5. Plaintiff Progress is a corporation organized and existing under the laws of Massachusetts, with its principal place of business at 14 Oak Park, Bedford, Massachusetts 01730.

6. Plaintiff NuSphere is a corporation organized and existing under the laws of Delaware, with its principal place of business at 14 Oak Park, Bedford, Massachusetts 01730. NuSphere is a wholly owned subsidiary of Progress.

7. Plaintiffs Progress and NuSphere collectively are sometimes referred to herein as "Progress" or "plaintiffs."

8. Upon information and belief, defendant MySQL is a corporation organized and existing under the laws of Sweden, with its principal place of business at Torsgatan 21 SE-113 82, Stockholm, Sweden.

9. Upon information and belief, defendant TCX is a corporation organized and existing under the laws of Sweden, with its principal place of business at Torsgatan 21 SE-113 82, Stockholm, Sweden. Upon information and belief, TCX and MySQL are affiliated companies.

10. Upon information and belief, defendant Axmark is a citizen of Sweden and was a founder of and currently is Chief Executive Officer of MySQL.

11. Upon information and belief, defendant Widenius is a citizen of Finland and is Chief Technology Officer of MySQL.

12. The true name and capacity, whether individual, corporate, associate, or

otherwise, of the defendant sued herein John Doe Corporation, are unknown to plaintiffs, who therefore sue said defendants by such fictitious name. Plaintiffs will seek leave of Court to amend this Complaint to state its true name and capacity when the same have been ascertained. Upon information and belief, John Doe Corporation may be MySQL Oy, a Finnish corporation recently organized by and in affiliation with one or more of the defendants.

13. Defendants MySQL, TCX, Axmark, Widenius, and John Doe Corporation collectively are sometimes referred to herein as "MySQL" or "defendants."

## JURISDICTION AND VENUE

14. Plaintiffs are citizens of Massachusetts and defendants are citizens or subjects of Sweden and/or Finland. The amount of controversy exceeds the sum or value of $75,000, exclusive of interests and costs. This Court has jurisdiction over this case under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. §1338, and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and § 2202.

15. This Court has personal jurisdiction over all of the defendants pursuant to M.G.L. c. 223A § 3.

16. Venue is proper in this judicial district under 28 U.S.C. § 1391(d).

## FACTS COMMON TO ALL CAUSES OF ACTION

A. MYSQL DATABASE SOFTWARE

17. The MySQL Code, which is at the heart of this action, is a Structured Query Language ("SQL") database management system. SQL is a common, standardized language used to access information stored in databases.

18. The MySQL Code has been available to the public since at least 1995. It was distributed under GPL as an "open source" software in September 2000, which means that it

is available from, for example, the Internet, and that anyone can use and modify the Code. These modifications benefit an open source arrangement in that the users will contribute to the development of the code by sending back to the defendants the proposed improvements and fixes. The purpose of the GPL is to enable MySQL to control the derivative or collective works based on the MySQL Code, and to indemnify MySQL from any liability arising out of the modification of the MySQL Code.

19. Parties that obtain commercial license(s) from MySQL must also comply with the terms of the GPL when they distribute their derivative product. In other words, such commercial users must transfer the same rights they received from MySQL under the GPL to the third parties.

20. The MySQL Code is written in C and C++, two common programming languages, thereby easily enabling modification. The Code is widely popular. Indeed, through message boards available on the Internet, developers can discuss enhancements to the Code or applications they have developed based on the Code. For example, a search on Google (an Internet search engine) for the term "MySQL" returned nearly 2.6 *million* matches, which indicates the substantial pervasiveness of this program as used for database management.

B.   THE MYSQL AGREEMENT BETWEEN THE PARTIES

21. Between on or about February 2000 and June 2000, Progress engaged in a series of negotiations with defendants concerning the release of the MySQL Code under the terms of the GPL, the launch of NuSphere as a venture, the clarification of certain trademark rights, and the relationship between the parties. These negotiations resulted in the MySQL Agreement.

22. Pursuant to the MySQL Agreement, ¶ 1, Progress was required to make a

first payment of $74,167 on the day that an announcement is made that Progress will provide enterprise level support for the MySQL Code and make available for consumers a packaged product that includes the Code. Providing enterprise level support for the MySQL Code translates to the ease of use of the Code, which was aimed at broadening its market into the corporate arena. The sum of $74,167, together with a $30,000 prepayment, was to be the first payment toward a committed payment of $312,501 or, at Progress's sole discretion, toward additional payments up to a potential of $2.5 million.

23. Progress made the first payment of $74,167, together with a $30,000 prepayment, to the defendants as required by the MySQL Agreement.

24. Progress made the requisite additional payments to the defendants, paying them the total sum to date of at least $312,501.

25. On or about June 28, 2000, defendants released the MySQL Code under GPL, as required by the MySQL Agreement, ¶ 3.

26. The defendants, pursuant to the MySQL Agreement, ¶ 4, granted Progress the right to sell and distribute the MySQL Code under GPL.

27. Under the MySQL Agreement, ¶ 5, Progress was granted the right to either purchase MySQL documentation at cost from an official printer yet to be designated or print such documentation itself should defendants have no exclusive printer for such documentation.

28. The defendants, pursuant to the MySQL Agreement, ¶ 6, also granted Progress the right to register and use the MySQL Combination Marks.

C.  THE FORMATION OF NUSPHERE

29. In reliance on the MySQL Agreement, Progress formed NuSphere to

distribute and support NuSphere MySQL open source database, which is a multi-platform integrated distribution of the MySQL Code and related open source products. NuSphere's purpose was to provide commercial support, consulting, and training for customers deploying the MySQL Code as part of their web infrastructure. As a single, global source of integrated services for the MySQL Code, NuSphere was to provide support from three main support centers in the United States, the Netherlands, and Australia.

30. Defendants were fully aware of the formation of NuSphere for the purposes described above. Indeed, defendants' website at mysql.com includes a press release describing the formation of NuSphere.

31. Plaintiffs invested well over $6 million and hired approximately 20 full-time personnel in order to accomplish the goals described above in reliance on the MySQL Agreement.

D. DEFENDANTS' APPLICATION FOR REGISTRATION OF "ENHANCED MYSQL"

32. Upon information and belief, on or about May 4, 2001, MySQL filed an application for registration of the mark "Enhanced MySQL" in International Class 42 for computer software and related user and training manuals and documentation; computer services, namely, design, development, consultation, installation, integration, training, maintenance, and technical support services for software.

33. By the MySQL Agreement, defendants contractually agreed, *inter alia*, to forbear their use of the mark "Enhanced MySQL." Thus, defendants' application and use of the mark was an intentional breach of the MySQL Agreement.

E. PLAINTIFFS' BUSINESS RELATIONSHIP WITH POLYCON AB

34. As alleged previously, under the MySQL Agreement, ¶ 5, Progress was

granted the right to either purchase MySQL documentation at cost from an official printer or print such documentation itself should defendants have no exclusive printer for such documentation.

35. Defendants designated Polycon Oy AB ("Polycon"), which upon information and belief is a corporation organized and existing under the laws of Finland, as the provider of official MySQL training.

36. Upon information and belief, Polycon developed the *Polycon Official MySQL Training Programme* ("Official MySQL Training") together with defendant Widenius and other MySQL personnel. Upon information and belief, Polycon created the Official MySQL Training in order to build a fully fledged set of MySQL courses and seminars that are on a par with courses that exist for commercial competitors such as Oracle, MS SQL Server, Sybase, or DB2. Upon information and belief, Polycon began providing Official MySQL Training in September 2000.

37. Polycon and plaintiffs entered into a contract ("Polycon Contract") wherein Polycon would provide MySQL documentation and training materials to NuSphere under license.

38. Pursuant to the Polycon Contract, NuSphere is required to pay Polycon royalties and a quarterly fee. In exchange, Polycon granted NuSphere exclusive rights to provide Official MySQL Training (and all materials related thereto) in the Americas.

39. Upon information and belief, defendants had knowledge of the business relationship between Polycon and NuSphere.

40. On or about June 8, 2001, defendants announced that MySQL had hired Mr. Kaj S. Arnö and other personnel from Polycon. Immediately before being hired by MySQL,

Mr. Arnö had founded Polycon and was its Chief Executive Officer. Upon information and belief, Mr. Arnö has followed the development of the MySQL Code since the first lines of code were written by defendant Widenius and thus is quite proficient in the Code.

41. By soliciting Mr. Arnö to leave Polycon, defendants stripped Polycon of its ability to provide meaningful services to plaintiffs. In so doing, defendants breached their obligations to plaintiffs and tortiously interfered with the contract between plaintiffs and Polycon.

F. THE CEASE AND DESIST LETTER

42. By letter dated June 12, 2001, counsel for MySQL wrote plaintiffs purporting to (a) terminate the MySQL Agreement, (b) inform plaintiffs that they are not authorized to use the MySQL name or any of the MySQL Combination Marks either by themselves or in combination with other marks, and (c) demand that plaintiffs cease and desist any and all uses of the MySQL name and MySQL Combination Marks.

43. The letter stated that failure by plaintiffs to comply with defendants' demands set forth in the letter "shall constitute willful trademark infringement, and is likely to cause further dilution and confusion in the marketplace among customers and give rise to further injury and damages to MySQL."

44. Plaintiffs do not believe that the MySQL Agreement has been properly terminated and thus they do not plan to comply with the demands set forth in defendants' letter.

FIRST CAUSE OF ACTION
Breach of MySQL Agreement
(Against All Defendants)

45. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 44 above as though fully set forth herein.

46. Defendants have breached the MySQL Agreement.

47. As a direct and proximate result of the breach by defendants, plaintiffs have been damaged in an amount yet to be determined.

## SECOND CAUSE OF ACTION
### Tortious Interference with Business Relationship
### (Against Defendant MySQL AB)

48. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 47 above as though fully set forth herein.

49. Upon information and belief, MySQL AB hired Mr. Arnö and other personnel from Polycon to interfere with the business relationship between Polycon and NuSphere.

50. As a direct and proximate result of the interference by MySQL AB, plaintiffs have been damaged in an amount yet to be determined.

## THIRD CAUSE OF ACTION
### Intentional Interference with Performance of Contract
### (Against Defendant MySQL AB)

51. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 50 above as though fully set forth herein.

52. Upon information and belief, MySQL AB hired Mr. Arnö and other personnel from Polycon to intentionally interfere with Polycon's ability to perform its contractual obligations to NuSphere.

53. As a direct and proximate result of the intentional interference with the performance of the Polycon Contract by MySQL AB, plaintiffs have been damaged in an amount yet to be determined.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (Against All Defendants)

54. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 53 above as though fully set forth herein.

55. Progress paid defendants the sum of $312,501.

56. Defendants have thus been unjustly enriched by the amount of $312,501.

57. As a direct and proximate result of the unjust enrichment of defendants, Progress has been damaged in the amount of $312,501.

## FIFTH CAUSE OF ACTION
### Declaratory Judgment of Non-Infringement of Trademarks
### (Against All Defendants)

58. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 57 above as though fully set forth herein.

59. By reason of defendants letter dated June 12, 2001 to plaintiffs, there is an actual controversy between plaintiffs and defendants concerning plaintiffs' potential liability for alleged infringement of defendants' trademark.

60. Plaintiffs are therefore in reasonable apprehension that they would be sued by defendants for plaintiffs' continued use of at least one of the MySQL Combination Marks.

61. Accordingly, a declaration by this Court that plaintiffs are within their rights to use the MySQL is warranted.

## SIXTH CAUSE OF ACTION
### Violation of M.G.L. c. 93A § 11
### (Against All Defendants)

62. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 61 above as though fully set forth herein.

63. The conduct of the defendants, as alleged above and all of which occurred within Massachusetts, constitutes unfair and deceptive acts or practices within the meaning of M.G.L. c. 93A § 2.

64. Defendants' violation of M.G.L. c. 93A § 11 has caused plaintiffs to suffer monetary loss in the conduct of their business or trade.

65. Defendants' use or employment of the unfair and deceptive acts alleged above has been a willful or knowing violation of M.G.L. c. 93A § 2.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request this Court to enter judgment for plaintiffs and against defendants:

A. As to the First, Second, Third, and Fourth Causes of Action, in the amount of plaintiffs' actual damages, as determined at trial, plus interest, costs, and expenses in this action;

B. As to the Fifth Cause of Action:

    1. Declaring that plaintiffs do not infringe any rights defendants may have in the MySQL mark or the MySQL Combination Marks;

    2. Declaring that plaintiffs' use of the MySQL Combination Marks do not dilute the MySQL mark;

    3. Declaring that plaintiffs have not engaged in unfair competition with defendants;

    4. Enjoining the defendants, their officers, agents, counsel, servants and employees, and all persons in active concert or participation with any of them, from charging infringement, dilution, or unfair competition, or instituting any action for infringement or

dilution of the MySQL Combination Marks against plaintiffs, or instituting any action for unfair competition against plaintiffs; and

    5. Awarding plaintiffs their reasonable attorneys' fees, expenses, and costs in this action.

  C. As to the Sixth Cause of Action, in treble the amount of plaintiffs' actual damages, as determined at trial, plus interest, costs, and expenses, including but not limited to plaintiffs' attorneys' fees; and

  D. For such other and further relief as the Court deems just and equitable.

          Respectfully submitted,

Dated: June 15, 2001     BROWN RAYSMAN MILLSTEIN
           FELDER & STEINER LLP

         By: *[signature]*
          PETER BROWN
          CATHERINE M. MCGRATH
          MARK SCHONFELD (BBO 446980)
          ANDRES N. MADRID

         900 Third Avenue
         New York, New York 10022
         Telephone: (212) 895-2000
         Facsimile: (212) 895-2900

         Attorneys for Plaintiffs,
          PROGRESS SOFTWARE CORPORATION and
          NUSPHERE CORPORATION