UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PROGRESS SOFTWARE CORPORATION and NUSPHERE CORPORATION, *

Plaintiffs, *

v. * **Civil Action No.: 01-CV-11031 (PBS)**

MySQL AB, T.C.X. DATAKONSULT AB, DAVID AXMARK, MICHAEL WIDENIUS, and JOHN DOE COPORATION, *

Defendants. *

* * * * * * * * * *

'01 JUL 11 P 4:32

## ANSWER OF MySQL AB AND DAVID AXMARK

MySQL AB ("MySQL AB") and David Axmark ("Axmark") (collectively "Defendants"), by their undersigned counsel, hereby answer the Complaint filed by Progress Software Corporation ("Progress") and NuSphere Corporation ("NuSphere").

## NATURE OF THE ACTION

1. Paragraph 1 of the Complaint describes Plaintiffs' purported causes of action, as to which Defendants deny any and all liability.

Further answering paragraph 1, Defendants state that MySQL AB (formerly known as TCX DataKonsult AB) is the sole rightful owner of the MySQL™ mark and brand.

2. Answering paragraph 2 of the Complaint, Defendants adopt and incorporate by reference their response to paragraph 1 herein. Further answering,

DOCKETED



Defendants state that on or about June 21, 2000, MySQL AB entered into a preliminary agreement with Progress (the "Interim Agreement"), which agreement is attached as **Exhibit 2** to the Counterclaim against Progress/NuSphere, adopted and incorporated by reference.

Further answering paragraph 2, Defendants state that MySQL AB prior to entering into any agreement with Progress, it had decided to release the MySQL™ Program under a form of open source license known as the GNU General Public License (the "GPL License"), attached as **Exhibit 1** to the Counterclaim. Further, prior to entering into any agreement with Progress, MySQL AB communicated to Progress its decision to release the MySQL™ Program under the GPL License *whether or not any agreement with Progress was reached.*

Further responding, Defendants state that the release of the MySQL™ Program under the GPL License provided a tremendous business opportunity to Progress if MySQL AB permitted Progress to participate in and be a part of this announcement and release.

Further answering, Defendants state that prior to the Interim Agreement, the parties had exchanged proposals concerning a prospective business relationship. Throughout these discussions, Progress articulated a series of proposals, all of which would have had the effect of conferring upon Progress exclusive rights to the MySQL™ mark and name. MySQL AB rejected all such proposals as inconsistent with its business plan and vision. The parties never resolved this fundamental difference.

On the eve of MySQL AB's release of the MySQL™ Program under the GPL License, the parties entered into the Interim Agreement. The Interim Agreement allowed Progress to participate in the GPL announcement and provides for certain payments to be made by Progress.

Specifically, the Interim Agreement provides that on the day of the GPL announcement, Progress would make a first payment of $74,167 ($104,167 - $30,000 prepayment) and would announce this as the first of a series of payments up to $2.5 million. Under the Interim Agreement, Progress agreed to continue making these payments at the level of $104,167 through at least August, 2000. Thereafter, additional payments by Progress and other arrangements were to be governed by a further anticipated final agreement between the parties.

Defendants are without knowledge and information and therefore deny the allegation in paragraph 2 that Plaintiffs acted in reliance upon the Interim Agreement in committing and expending many millions of dollars "in carrying out its business plan for its newly-created MySQL-related venture." Defendants further deny that Plaintiffs could have reasonably so relied as alleged.

Plaintiff NuSphere was formed prior to the inception of the Interim Agreement. The Interim Agreement, by its terms, contemplates that the parties would attempt to negotiate a definitive final agreement concerning their prospective relationship, the terms of which were then unknown. Further responding, Defendants state that the anticipated life of the Interim Agreement was approximately three months.

Further answering, Defendants deny that the Interim Agreement grants Plaintiffs the right to use the MySQL™ mark or brand in perpetuity. Rather, the Interim Agreement granted Progress the limited right to use the "MySQL" trademark and certain specified combination marks limited to "NuSphere MySQL," "enhanced MySQL", and "Rocket MySQL" during the life of the Interim Agreement and to register these combination marks on behalf of MySQL AB.

Further answering, Defendants state the MySQL Program was the most widely-used open source database of its kind long before the date of the Interim Agreement. Thus, Defendants deny that the MySQL Program needed any "credibility."

3. Answering paragraph 3, Defendants adopt and incorporate by reference their answers to paragraphs 1 and 2 herein. Responding further, Defendants state that the Interim Agreement requires the parties to make good faith efforts to reach a final, definitive agreement; otherwise, the Interim Agreement may be terminated. At the time the Interim Agreement was negotiated and accepted, it was unknown whether the parties in fact would be able to reach a final agreement. Defendants admit that no final agreement was reached. Defendants deny that they have ever competed unfairly with the Plaintiffs or have ever had any intention of doing so. Further responding, Defendants adopt and incorporate by reference the allegations set forth in the Counterclaim filed herewith.

4. The allegations in paragraph 4 are denied. Further responding, Defendants adopt and incorporate by reference the allegations set forth in the Counterclaim.

## THE PARTIES

5. Paragraph 5 is admitted.

6. Paragraph 6 is admitted.

7. Paragraph 7 of the Complaint contains no allegations of fact, and therefore requires no answer.

8. Defendants admit that MySQL AB is a corporation organized and existing under the laws of Sweden, but deny all other allegations in paragraph 8.

9. Answering paragraph 9, Defendants state that T.C.X. DataKonsult AB ("TCX") is a corporation organized under the laws of Sweden, but deny any present affiliation between TCX and MySQL AB. Further answering, Defendants state that Defendant MySQL AB was formerly known as TCX DataKonsult AB.

10. Answering paragraph 10, Defendants admit that David Axmark is a citizen of Sweden, a co-founder of MySQL AB, and its current Chief Executive Officer.

11. Answering paragraph 11, Defendants admit that Michael Widenius is a citizen of Finland and the current Chief Technology Officer of MySQL AB.

12. Answering the allegations in paragraph 12, concerning the unidentified John Doe corporation, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of these allegations, and accordingly, deny same.

13. Paragraph 13 of the Complaint contains no allegations of fact and therefore requires no answer.

## JURISDICTION AND VENUE

14. Answering paragraph 14, Defendants adopt and incorporate by reference their answers to paragraphs 5, 6, 8, 9, 10, 11 and 12 herein. Further responding, Defendants state that the remaining allegations in paragraph 14 state only legal conclusions to which no answer is required. To the extent an answer may be required, the allegations are denied.

15. Paragraph 15 is denied.

16. Paragraph 16 states a legal conclusion requiring no answer. To the extent an answer may be required, paragraph 16 is denied.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. MySQL DATABASE SOFTWARE

17. Answering paragraph 17, Defendants admit that the source code underlying the MySQL™ Program (the "MySQL Source Code") is a "Structured Query Language" database management system. To the extent paragraph 17 asserts, or is intended to imply, that the MySQL™ Source Code is a "common, standardized language used to access information stored in databases," it is denied.

18. Answering paragraph 18, Defendants state that the MySQL™ Source Code has been available for sale to the public since at least 1996. Further responding, the MySQL™ Source Code was first released subject to the terms of the GPL License beginning on June 28, 2000, at which time the MySQL Source Code for the MySQL™ Program became accessible on the Internet, subject to the terms and conditions of the GPL License. (Prior to June 28, 2000, the Source Code for the MySQL

Program was available on the Internet subject to the terms and conditions of other open source licensing arrangements.) Defendants deny that release of the MySQL™ Source Code under the GPL License means that anyone can use, modify or distribute the Source Code without restriction. The restrictions imposed by the GPL License are set forth therein. A copy of the GPL License under which MySQL™ Source Code was released in June 2000 is attached as **Exhibit 1** to the Counterclaim against Progress/NuSphere, and is adopted and incorporated herein by reference. Responding further to paragraph 18, Defendants state that one of the purposes of the GPL License is to facilitate ongoing software development and improvement. Defendants deny, however, that release of the MySQL™ Program under the GPL License in June, 2000 has resulted in the proposal of "improvements" and/or "fixes," of the MySQL™ Source Code by users.

Further answering paragraph 18, Defendants state that release of MySQL™ Source Code under the GPL License is expected to vastly expand distribution and use of the MySQL™ Source Code, and thereby vastly expand the market for support services related to the MySQL™ Program. Support services are provided by MySQL AB on a fee basis. All other allegations in paragraph 18 of the Complaint are denied.

19. The allegations in paragraph 19 are denied.

20. Answering paragraph 20, Defendants admit that "the MySQL Code is written in C and C++", that these languages are common programming languages and that the MySQL™ Source Code *is* "widely popular." Defendants deny

that use of the C and C++ programming languages enables programmers to modify the MySQL™ Source Code easily or readily.

Further responding to paragraph 20, Defendants state that software developers and/or users may frequently discuss their use of the MySQL™ Source Code on public message boards. Answering further, Defendants state that few individuals have the knowledge or expertise necessary to develop "enhancements" based on the Code. Defendants are without knowledge or information as to whether an Internet search by or at the behest of Plaintiffs yielded "2.6 million matches" with the term "MySQL." Responding further, Defendants state that such Internet matches are a direct outgrowth of efforts by MySQL AB and its founders in developing and promoting use of the Code for the MySQL™ Program.

**B. THE MySQL AGREEMENT BETWEEN THE PARTIES**

21. The allegations in paragraph 21 of the Complaint are denied. Further responding, Defendants state that during the period from approximately February through June 21, 2000, David Axmark and Michael Widenius communicated with representatives of Progress concerning a prospective business relationship between Progress and MySQL AB, and the form such relationship might take. Defendants deny that these discussions or negotiations were related in any way to "clarification" of MySQL's AB trademark rights, which at all times were clearly understood and accepted by Progress.

22. Answering paragraph 22, Defendants adopt and incorporate by reference their answer to paragraph two herein concerning the payments required by

Progress under the Interim Agreement. Further responding, Defendants state that during the life of the Interim Agreement, payments were to be made by Progress in monthly installments in the amount of $104,167.00. Progress was permitted during the life of the Interim Agreement to provide support for the MySQL™ Source Code using the MySQL™ mark in a limited fashion. Further responding to the allegations in paragraph 22, Defendants state that the "enterprise level support," referenced in paragraph 22 of the Complaint, is unrelated to "ease of use" of the MySQL™ Source Code by the user. Further answering, Defendants state that prior to entering into the Interim Agreement, MySQL AB (formerly known as TCK DataKonsult AB) already was providing enterprise level and other support for the MySQL™ Source Code in the corporate arena. Defendants deny the remaining allegations contained in paragraph 22.

23. Answering paragraph 23, Defendants state that Progress paid $30,000.00 prior to the inception of the Interim Agreement in order to induce MySQL AB to continue negotiations of a prospective business relationship with Progress. Defendants admit that after the Interim Agreement was accepted, an additional payment of $74,167.00 was made by Progress.

24. Answering paragraph 24, Defendants admit that Progress made payments totaling $312,501.00, but deny that this sum constitutes the total sum due from Progress under the Interim Agreement. Accordingly, the allegation that Plaintiffs made the "requisite" additional payments under the Interim Agreement is denied.

25. Answering paragraph 25, Defendants admit that the MySQL™ Source Code was released under the GPL License on June 28, 2000. Further responding,

Defendants state that MySQL AB had decided to release the MySQL™ Source Code under the GPL License, whether or not any agreement was reached with Progress and informed Progress of that decision prior to the existence of an Interim Agreement. Accordingly, Defendants deny that the Interim Agreement requires MySQL AB to release the MySQL™ Source Code under the GPL License, but rather reflects MySQL AB's prior decision to do so.

26. Answering paragraph 26, Defendants admit that paragraph 4 of the Interim Agreement confirms that Progress has the right to sell and distribute the MySQL™ Code subject to the terms and conditions of the GPL License, just as and to the same extent as all GPL licensees are permitted to sell and distribute the MySQL Source Code, subject to the terms and conditions of the GPL License. Defendants deny that paragraph 4 of the Interim Agreement grants Progress the right to sell and distribute the MySQL™ Code other than in strict accordance with the terms of the GPL License.

27. Defendants admit the allegations in paragraph 27, except that Defendants deny that the Interim Agreement confer such rights in perpetuity. Further answering, Defendants state that the Interim Agreement, by its terms, contemplates that the parties would negotiate a further final agreement. Defendants further state that the anticipated life of the Interim Agreement was three months, and that the terms under which Progress would be permitted to obtain, distribute or publish any MySQL™ documentation thereafter were to be governed by the terms of the anticipated final agreement.

28. Paragraph 28 is denied. Further answering, Defendants state that the Interim Agreement allowed Progress to use certain combination trademarks limited to "NuSphere MySQL," and "enhanced MySQL" and "Rocket MySQL," during the life of the Interim Agreement, and to register these combination marks on behalf of MySQL AB. Defendants deny that the Interim Agreement conferred on Progress any right to use these combination marks in perpetuity or to register these combination marks to or in the name of Progress and/or Nusphere.

**C. FORMATION OF NUSPHERE**

29. The allegations in paragraph 29 are denied. Further responding, Defendants adopt and incorporate by reference their answer to paragraph 2 herein. Further answering, Defendants deny that NuSphere was created for the purpose of "provid[ing] commercial support, consulting, and training for customers deploying the MySQL Code . . .", but rather, for the purpose of providing commercial support for open source software products generally.

30. Answering paragraph 30, Defendants adopt and incorporate by reference their answer to paragraph 29 of the Complaint as set forth herein. Further answering, Defendants state that the website "mysql.com" included a press release concerning NuSphere.

31. Answering paragraph 31, Defendants adopt and incorporate by reference their answer to paragraphs 29 and 30 of the Complaint as set forth herein. Further answering, Defendants deny that Plaintiffs "invested well over $6 million and hired approximately 20 full-time personnel ... in reliance on the MySQL Agreement."

D. DEFENDANTS' APPLICATION FOR REGISTRATION OF ENHANCED MYSQL

32. Answering paragraph 32, Defendants admit that, consistent with its ownership rights, on or about May 4, 2001, MySQL AB filed an intent to use application for registration of the mark "Enhanced MySQL" in International Class 42 for computer software and related user and training manuals and documentation, as further set forth in the application.

33. The allegations in paragraph 33 of the Complaint are denied.

E. PLAINTIFFS' BUSINESS RELATIONSHIP WITH POLYCON AB

34. Answering paragraph 34, Defendants adopt and incorporate by reference their answer to paragraph 27 of the Complaint as set forth herein.

35. The allegations in paragraph 35 of the Complaint are denied.

36. Answering paragraph 36, Defendants admit that Polycon developed training material related to the MySQL Program for the purpose of providing education and instruction on a par with courses offered for competitors' products. Defendants admit that Polycon began providing training related to the MySQL Program beginning in September 2000. Defendants deny the remaining allegations in paragraph 36.

37. Answering paragraph 37, Defendants state that Polycon entered into a contract with NuSphere to provide training materials to NuSphere. Defendants deny the remaining allegations in paragraph 37 of the Complaint.

38. Answering paragraph 38, Defendants deny that "Polycon granted NuSphere exclusive rights to provide Official MySQL Training (and all materials

related thereto) in the Americas" as alleged. Further answering, Defendants are without knowledge or information sufficient to form a belief as to the payments NuSphere is or may be required to make to Polycon and accordingly, deny these allegations.

39. Answering paragraph 39, Defendants adopt and incorporate by reference their answers to paragraphs 35 through 38 of the Complaint, as set forth herein. Further answering, Defendants state that MySQL AB is aware that there is a contractual relationship between Polycon and NuSphere.

40. Answering paragraph 40, Defendants admit that Mr. Kaj S. Arnö is a co-founder of Polycon and was its Chief Executive Officer. Further responding, Defendants admit that Mr. Arnö has followed the development of the MySQL™ Program, which was written primarily by Michael Widenius, but deny that Mr. Arnö is "quite proficient" in the MySQL™ Source Code. Further responding, Defendants state that Mr. Arnö left Polycon to assume a position with Smart Words, a company which MySQL AB is in the process of acquiring. Defendants admit that as a result, MySQL AB announced that Mr. Arnö and other personnel had joined the company and that Mr. Arnö has been appointed a Vice President.

41. The allegations in paragraph 41 are denied.

## F. THE CEASE AND DESIST LETTER

42. Responding to the allegations in paragraphs 42, Defendants admit that MySQL AB, through counsel, advised Senior Counsel to NuSphere, concerning the violations of MySQL AB's rights, as detailed in counsel's letter of June 12, 2001. Further

answering, Defendants state that counsel's letter of June 12, 2001, attached as **Exhibit 6** to the Counterclaim, adopted and incorporated by reference, speaks for itself.

43. Answering paragraph 43, Defendants adopt and incorporate by reference their answer to paragraph 42 of the Complaint, as set forth herein.

44. Paragraph 44 is a statement of Plaintiffs' opinions and/or intentions, as to which Defendants are without knowledge. Accordingly, paragraph 44 is denied.

**FIRST CAUSE OF ACTION**
**Breach of MySQL Agreement**
**(Against All Defendants)**

45. Defendants, MySQL AB and David Axmark, adopt and incorporate by reference their answers to paragraphs 1 through 44 of the Complaint as if set forth fully in response to paragraph 45 of the Complaint.

46. Defendants deny that they breached the MySQL Agreement as alleged in paragraph 46 .

47. Defendants deny the allegations set forth in paragraph 47 of the Complaint.

**SECOND CAUSE OF ACTION**
**Tortious Interference With Business Relationship**
**(Against Defendant MySQL AB)**

48. MySQL AB adopts and incorporates by reference its answers to paragraphs 1 through 47 as if set forth fully herein in response to paragraph 48 of the Complaint.

49. The allegations in paragraph 49 are denied.

50. The allegation in paragraph 50 is denied.

**THIRD CAUSE OF ACTION**
**Intentional Interference With Performance of Contract**
**(Against Defendant MySQL AB)**

51. MySQL AB adopts and incorporates by reference its answers to paragraphs 1 through 50 as if set forth fully in response to paragraph 51 of the Complaint.

52. MySQL AB denies the allegations in paragraph 52 of the Complaint.

53. MySQL AB denies the allegations contained in paragraph 53 of the Complaint.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Against All Defendants)**

54. Defendants, MySQL AB and David Axmark, adopt and incorporate by reference their answers to paragraphs 1 through 53 of the Complaint as if set forth fully herein in response to paragraph 54 of the Complaint.

55. The allegations in paragraph 55 of the Complaint are denied.

56. The allegations in paragraph 56 of the Complaint are denied.

57. The allegations in paragraph 57 of the Complaint are denied.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment on Non-Infringement of Trademarks**
**(Against All Defendants)**

58. Defendants, MySQL AB and David Axmark, adopt and incorporate by reference their answers to paragraphs 1 through 57 as if set forth fully herein in response to paragraph 58 of the Complaint.

59. Answering paragraph 59, Defendants admit that there is an actual controversy with respect to the Plaintiffs' liability for infringement of MySQL AB's trademark. Defendants deny the remaining allegations contained in paragraph 59.

60. Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters alleged in paragraph 60 and accordingly, deny same.

61. The allegation in paragraph 61 is denied.

**SIXTH CAUSE OF ACTION**
**Violation of M.G.L. c. 93A § 11**
**(Against All Defendants)**

62. Defendants, MySQL AB and David Axmark, adopt and incorporate by reference their answers to paragraphs 1 through 61 as is set forth fully in response to paragraph 62 of the Complaint.

63. The allegations in paragraph 63 of the Complaint are denied.

64. The allegations in paragraph 64 of the Complaint are denied.

65. The allegations in paragraph 65 of the Complaint are denied.

**AFFIRMATIVE DEFENSES**

1. The Complaint fails to state any claim against Defendants upon which relief may be granted.

2. Plaintiffs' claims are barred by their fraudulent and otherwise wrongful conduct with respect to the claims and allegations asserted in the Complaint.

3. Plaintiffs' claims are barred by the doctrine of unclean hands.

4. The Court lacks jurisdiction of the claims asserted in the Complaint against these Defendants.

5. Without waiver of the requirement that Plaintiffs prove the elements of each and every element of their claims, Plaintiffs' claims are barred by the absence of any legally cognizable "damages" proximately caused by the Defendants.

6. Plaintiffs' claims are barred by limitations.

7. Plaintiffs' claims are barred by laches.

8. Plaintiffs' claims are barred by estoppel.

9. Plaintiffs' claims are barred by the law of waiver.

10. Defendants adopt and incorporate by reference such defenses as may be asserted by any other party hereto, to the extent applicable to these Defendants.

11. Defendants reserve the right to rely upon any defenses available in law or in fact and reserve the right to amend their Answer accordingly.

WHEREFORE, having answered Plaintiffs' Complaint, Defendants MySQL AB and David Axmark respectfully request that the Court dismiss Plaintiffs' claims against these Defendants with prejudice and award to these Defendants their

costs and reasonable attorneys' fees incurred in responding to the claims which have been asserted by Plaintiffs in bad faith and for improper purposes, as set forth more fully in the Counterclaim.

**DEMAND FOR JURY TRIAL**

Counter-Plaintiff hereby demands trial by jury on all issues so triable.

Gary C. Crossen, Esquire (BBO #106580)
Brendan P. Mitchell (BBO #633835)
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, Massachusetts 02110
(617) 330-7036

*Attorneys for Defendants*
*MySQL AB and David Axmark*

Counsel Seeking Pro Hac Vice Admission:

William F. Ryan, Jr.
Lisa A. Kershner
Steven E. Tiller
Ilana Subar
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700

*Attorneys for Defendants*
*MySQL AB and David Axmark*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July, 2001, a copy of the foregoing Answer of MySQL AB and David Axmark was served by facsimile and by first class mail, postage prepaid to:

Peter Brown
Catherine M. McGrath
Mark Schonfeld
Andres N. Madrid
Brown, Raysman, Millstein, Felder & Steiner, L.L.P.
900 Third Avenue
New York, New York 10022

*Attorneys for Plaintiffs, Progressive Software Corporation and NuSphere Corporation*

Gary C. Crossen

1357964.3