**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| PROGRESS SOFTWARE CORPORATION and NUSPHERE CORPORATION, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | **Civil Action No.: 01-CV-11031(PBS)** |
| MySQL AB, T.C.X. DATAKONSULT AB, DAVID AXMARK, MICHAEL WIDENIUS, and JOHN DOE COPORATION, | * | |
| | * | |
| Defendants. | * | |
| * * * * * | * | * * * * * |
| MySQL AB, | * | |
| Counter-Plaintiff/Defendant, | * | |
| v. | * | |
| PROGRESS SOFTWARE CORPORATION and NUSPHERE CORPORATION, | * | |
| * | * | |
| Counter-Defendants/Plaintiffs. | | |
| * * * * * * * * * * * | | |

**COUNTERCLAIM**

Defendant/Counter-Plaintiff MySQL AB ("MySQL AB"), by counsel, pursuant to

Fed. R. Civ. Proc. 13, hereby files this counterclaim against the Plaintiffs/Counter-

Defendants Progress Software Corporation and NuSphere Corporation (collectively

"Progress/NuSphere"), and in support thereof alleges as follows:

1

DOCKETED

This Counterclaim arises from unfair and deceptive trade practices and an ongoing, wrongful scheme by the Counter-Defendants to pirate certain valuable trademark and other property belonging to MySQL AB. MySQL AB seeks a declaration of its rights, injunctive relief to prevent continued violation of its rights, and damages.

## INTRODUCTORY STATEMENT

MySQL AB is a Swedish company that provides products and services related to a copyrighted computer database management software that the company promotes using the MySQL™ mark (the "MySQL™ Program"). The MySQL™ Program was written and developed primarily by Michael "Monty" Widenius, one of the founders of MySQL AB.

The "source code" for the MySQL™ Program is the foundation of the MySQL™ Program. It is the set of natural language instructions which, when converted to "object code" (a computer-readable binary code or sequence consisting only of the numerals "0" and "1"), enables the MySQL™ Program to operate.

The MySQL™ Program is "open source" software in that MySQL AB has made its source code available to licensees under various "open source" licenses since its first release in or before 1996. On June 28, 2000, the MySQL™ Program was released, and continues to be distributed under, an "open source" license known as the GNU General Public License (the "GPL License").

The MySQL™ Program is extremely fast and reliable, and currently is the most widely used "open source" database management system in the world. The open

source nature of the MySQL™ Program advances the company's goals of insuring that the MySQL™ Program is: (a) the best and the most used database in the world; (b) available and affordable for all; (c) easy to use; (d) continuously improved while remaining fast and safe; (e) fun to use and improve; and (f) free from bugs.

In order to further these goals, MySQL AB also has sought to build a worldwide network to provide high quality product support and services related to the MySQL™ Program.

The MySQL™ mark and brand have become well known to, and accepted by, the consuming public as signifying MySQL AB's fast, reliable, and widely used "open source" database management system and services.

In October 1999, after the MySQL™ Program had been available to the public for several years, Progress, a NASDAQ-listed, global supplier of software products and services, attempted to buy exclusive rights to MySQL AB's valuable intellectual properties, including the MySQL™ Program, the MySQL™ trademark and brand, and related goodwill.

MySQL AB rejected this proposal as fundamentally inconsistent with the company's goal of growing the business via a network of non-exclusive service providers.  Nonetheless, because MySQL AB viewed Progress as a viable candidate to provide product support and related services in the United States on a non-exclusive basis, it engaged in further discussions with Progress concerning a prospective business relationship.

By the beginning of June 2000, the parties had not reached agreement on the terms or structure of a business relationship. MySQL AB notified Progress that MySQL AB was in discussions with another third party, and that MySQL AB intended to release the MySQL™ Program under the GPL License in June, 2000.

Thereafter, on or about June 21, 2000, MySQL AB entered into an interim agreement with Progress (the "Interim Agreement"). Under the Interim Agreement, Progress was permitted to participate in the GPL announcement, an event which presented tremendous business opportunities for Progress. Progress also was permitted limited use of the MySQL™ mark and certain combination marks in providing certain products and services in exchange for certain payments during the anticipated life of the Interim Agreement. Because the parties had agreed that the Interim Agreement was intended to serve a short-term purpose only, they further agreed to work toward a final, definitive agreement concerning their business relationship.

Rather than entering into good faith negotiations with MySQL AB, as Progress, and its wholly-owned subsidiary, NuSphere, embarked on a course of actions intended simply to co-opt the property of MySQL AB, by among other acts:

- Misrepresenting that the combination marks "NuSphere MySQL" and "Enhanced MySQL" are trademarks of NuSphere Corp. in the U.S. and other countries;

- Using other marks, such as "NuSphere MySQL Advantage" without having the right to do so and in a manner which misleads and is likely to confuse the public;

4

- Misrepresenting its "NuSphere MySQL Advantage" product as "seriously open software" when not all of the components thereof are released on an open source basis (i.e. NuSphere-added components are "closed" source);

- Diluting the MySQL™ mark by licensing components of "Enhanced MySQL" on a non-open source basis;

- Diluting the MySQL™ mark by publishing such statements as: *"Registered members of our beta program will see the future of MySQL."*;

- Using MySQL AB's logo on NuSphere's software distribution packaging without making the promised royalty payments;

- Failing to make payments to MySQL AB as promised during the period of the Interim Agreement;

- Continuing to use and benefit from MySQL AB's mark, property and goodwill, while making no payment therefor;

- Disseminating information via its web site, product distribution, press releases and other media which misleads and is likely to confuse the public as to the relationship between the parties;

- Using the MySQL™ trademark in press releases and other marketing materials in violation of the Interim Agreement and MySQL AB's trademark rights; and

- Violating the Interim Agreement and the GPL License by, among other things, selling derivative works based on the MySQL™ Program without making the underlying source code available.

In light of the foregoing violations, on May 13, 2001, MySQL AB sent a letter to NuSphere demanding that it cease and desist all such infringing activities, and that it make good faith efforts to reach a final agreement and resolution with MySQL AB by June 8th. On June 12, 2001, MySQL AB learned that only days before NuSphere had registered the domain name "mysql.org" in NuSphere's name. MySQL AB, on June 12, 2001, by counsel, sent a letter demanding that NuSphere cease and desist its unlawful

conduct and formally terminating the Interim Agreement as a result of the foregoing material breaches of the Interim Agreement.

In a final effort to determine whether the parties could salvage their relationship, the CEO of MySQL AB, David Axmark, and CEO-designate, Mårten Mickos, on June 12, 2001, traveled from Sweden and Finland, respectively, to Bedford, Massachusetts for a three-day meeting with representatives of Progress/NuSphere.

During the afternoon of June 15, 2001, the third day of the meeting, the MySQL AB representatives were served with this lawsuit.

The lawsuit, initiated by Progress/NuSphere, is a continuation of the same bad faith conduct by which Progress/Nusphere has and continues to pirate MySQL AB's valuable property and goodwill, and constitutes an attempt by Progress/NuSphere to mask its own nefarious behavior.

This Counterclaim is filed by MySQL AB to establish and protect its indisputable ownership of the MySQL™ mark and brand, to prevent the continued misappropriation and wrongful use of its property, to prevent the continued engagement in unfair and deceptive acts, and to obtain damages for the past and continuing harm caused by the unlawful conduct of the Counter-Defendants.

## THE PARTIES

1.     MySQL AB is a privately held Swedish corporation organized and existing under the laws of Sweden.  MySQL AB is the successor by name change to TCX DataKonsult AB ("TCX").

2.     Progress is a publicly held United States corporation organized and existing under the laws of Massachusetts, with its principal place of business in Bedford, Massachusetts.

3.     NuSphere is a wholly-owned subsidiary of Progress, and is a corporation organized and existing under the laws of Delaware, with its principal place of business in Bedford, Massachusetts.

## JURISDICTION & VENUE

4.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332, and 1338.

5.     This court has in personam jurisdiction over Counter-Defendants.

6.     Venue is proper under 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The MySQL™ Program

7.     Beginning in 1994, Michael "Monty" Widenius began to write the source code for the MySQL™ Program, which is a sophisticated and intricate computer database management system.  A database management system, such as the MySQL™ Program, is used to add, access, and process data stored in a computer database.  The MySQL™ Program was originally developed to handle large databases on a faster basis than other systems.

8.     Though under constant development, more than 95% of the MySQL™ Program was written and developed by Michael Widenius.  A longtime friend of

Mr. Widenius, David Axmark, was also involved in developing the MySQL™ Program and is a principal author of the MySQL™ manual and other documentation.

9.      The MySQL™ Program has been successfully used in highly demanding production environments for several years.  Its speed, superior design and capacity to interface with popular software tools and programming languages make the MySQL™ Program well suited for accessing databases on the Internet.  The MySQL™ Program has been chosen for internal applications by such companies as Silicon Graphics, Xerox, Nortel, Motorola, as well as NASA and the Department of The Navy, and is used to manage data collected on popular web sites such as Yahoo!, Slashdot, and Linux.com.

10.     Traditionally, the most common method of distributing software products has been by means of restrictive "closed source" licenses that: (a) permit licensees to receive only the object code for the licensed programs; (b) prohibit licensees from altering or distributing copies of the licensed programs; and (c) deny or, at best, severely limit the licensee's right to access or use the source code for the licensed programs.

11.     In contrast, MySQL AB has distributed the MySQL™ Program through a dual licensing system using the GPL License and other "open-source" licenses, as well as under commercial licenses.

12.     Commercial licenses are offered to third parties who wish to incorporate the code for the MySQL™ Program into a commercial product in exchange for consideration paid to MySQL AB, as licensor.  Under a commercial license, the licensee need not make the source code for the licensed software available to users.

13.     Licensing of the MySQL™ Program under an "open source" license such as the GPL License, by contrast, guarantees the licensee full and open access to the source code for the MySQL™ Program. Having "open" access to the source code allows a licensee to read and alter the MySQL™ Program and to build derivative works, subject to the terms and conditions of the open source license.

14.     Under the terms of the GPL License, a GPL licensee can distribute derivative programs or works based on GPL-licensed programs as long as the licensee also meets the following three restrictions:

First, the licensee must "cause the modified files to carry prominent notices stating that [the licensee] changed the files and the date of any change."

Second, "any work that [the licensee] distribute[s] or publish[es], that in whole or in part contains or is derived from the Program or any part thereof, [must] be licensed as a whole at no charge to all third parties under the terms of [the GPL License]."

Third, the modified work must "print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that [the licensee] provide[s] a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License."

A copy of the GPL License as included in MySQL AB's manual (at section L) is attached hereto as **Exhibit 1**.

15.     The GPL License further provides that any commercial distribution of a GPL-licensed program or derivative work or work based on such a program must be accompanied by "the complete corresponding machine-readable source code," or, "a written offer, valid for at least three years, to give any third party . . . a complete machine-readable copy of the corresponding source code," or, "accompany it with the information "received as to the offer to distribute corresponding source code."

16.     The foregoing conditions and requirements are intended to ensure the integrity of the open software distribution system, including  by making clear to each user the author of each component of code distributed.

17.     Distributing the MySQL™ Program under the GPL License has and will vastly expand the distribution and use of the code underlying the MySQL™ Program around the world.  More widespread use of the MySQL™ Program also expands the need, and thus, the opportunities for providing support services to users and developers of the MySQL™ Program.

### MySQL AB – The Company Behind the MySQL™ Program

18.     MySQL AB is engaged in developing, supporting, and marketing the MySQL™ Program.  MySQL AB was founded by MySQL developers Michael "Monty" Widenius (current Chief Technology Officer), David Axmark (CEO) and Allan Larsson.

19.     Michael "Monty" Widenius began writing the MySQL™ Program in 1994. He began to write the MySQL interface on top of UNIREG, another database application Widenius developed starting in 1979.  In January 2001, TCX changed its name to MySQL AB.

20.     The development and distribution of the MySQL™ Program has been profitable from its first release.  Revenues have derived from product support, licenses and consulting services.  Michael Widenius alone has written more than 50,000 e-mails about the MySQL™ Program, responding to questions or comments by its users. Widenius, Axmark, and others affiliated with MySQL AB frequently speak about the MySQL™ Program at conferences conducted all around the world.  MySQL AB also provides consulting services through its developers and consultants in at least 12 countries.

21.     The MySQL™ Program has received widespread acclaim in print, trade literature, and other media.  Likewise, the MySQL™ mark has appeared prominently in these media.

22.     All of these services are provided under the MySQL™ name and mark, which have been in continuous use since as early as 1996.  Revenues from these activities have been largely invested in further ongoing development of the source code underlying the MySQL™ Program and promotion of the MySQL™ Program.

23.      MySQL AB is an owner of the copyright to the source and object codes for the MySQL™ Program.

24.     On January 26, 2001, the MySQL™ mark was formally registered to MySQL AB under the laws of Sweden.

25.     On June 14, 2001, the MySQL™ mark was formally registered in Benelux, China, Denmark, Finland, France, Germany, Italy, Japan, Norway, Russian Federation, Singapore, Spain, and the United Kingdom via the Madrid Agreement and Protocol.

11

26.     Several applications are pending in the United States Patent and

Trademark Office on behalf of MySQL AB to obtain federal trademark registration for

the MySQL™ mark for certain goods and services.

27.     MySQL AB is the sole rightful owner of the MySQL™ mark in the United

States, Sweden and other countries, and as such has the exclusive right to protect the

mark from infringement and other injury.

28.     MySQL AB owns the domain name "mysql.com" including the website

that has been operated continuously at that domain name since approximately January

1998.

29.     MySQL AB has expended and continues to expend substantial money,

time and effort to promote its MySQL™ mark globally.

30.     As a result of these efforts, the MySQL™ mark and brand have become

widely known to, and accepted by, the consuming public as signifying MySQL AB's

fast, reliable, and most widely used "open source" database management system and

services.

31.     Moreover, through MySQL AB's longstanding and continuous use and

promotion of the MySQL™ name, mark and logo, the MySQL™ name, mark and logo

have acquired substantial and valuable goodwill.

**The Interim Agreement Between Progress and MySQL AB**

32.     Progress, a publicly traded company, promotes itself as a global supplier of software products and services for developing, deploying and managing business applications moving to the Internet.

33.     In October, 1999, Progress contacted MySQL AB for the purpose of acquiring the rights held by MySQL AB in the MySQL™ Program and the MySQL™ mark.  In response, MySQL AB made clear that it was not interested in selling exclusive rights to Progress, but instead would consider having Progress as a non-exclusive partner. The parties thereafter entered into discussions concerning a prospective business relationship, but were not able to resolve this fundamental difference.  At all times during these discussions and negotiations, Progress understood and acknowledged the value of the MySQL™ Program and the MySQL™ name and mark.

34.     During the course of the discussions, MySQL AB informed Progress that MySQL AB intended to release the MySQL™ Program via the GPL License, thereby making the MySQL™ Program more widely available.  MySQL AB further advised Progress that it would release the MySQL™ Program under the GPL License in June 2000, whether or not it had reached any agreement with Progress concerning an ongoing relationship.

35.     The release of the MySQL™ Program via the GPL License would have presented a tremendous business opportunity for Progress to sell support and services for the MySQL™ Program if it were allowed to use the MySQL™ mark and name (or combination names) in its advertising and promotion.  Likewise, the presence of

Progress as a U.S. partner appeared to offer the prospect of strengthening MySQL AB's presence in the U.S. market as well.

36.     On June 21, 2000, Progress and MySQL AB entered into the Interim Agreement.  Under the Interim Agreement, MySQL AB agreed to allow Progress to participate in the announcement that the MySQL™ Program would be released under the GPL License.  Specifically, the Interim Agreement provides that on the day of this announcement, Progress would make a first payment to MySQL AB and would announce this as the first of a series of total anticipated payments up to $2.5 million.  Progress agreed to continue making these payments at the level of $104,167 through at least August, 2000.  Thereafter, payments by Progress and other arrangements, such as further arrangements concerning MySQL AB's control of the quality of goods and services promoted by Progress by means of the MySQL™ mark, were to be governed by a further, final agreement between the parties.

37.     Under the Interim Agreement, MySQL AB further agreed to allow Progress the limited right to use the MySQL™ mark and certain combination marks limited to, "NuSphere MySQL," "enhanced MySQL," and "Rocket MySQL" during the life of the Interim Agreement in connection with certain products and services.  The Interim Agreement contemplated that any final agreement would address the amount of the royalty payments Progress would pay MySQL AB on a going forward basis.  A copy of the Interim Agreement is attached hereto as **Exhibit 2.**

38.     In e-mail and other communications with MySQL AB, Progress repeatedly and expressly recognized that MySQL™ is a protectable mark; that MySQL AB is the

14

owner of the MySQL™ mark ; that the MySQL™ mark has tremendous value; and that

Progress cannot and should not dilute the value of the MySQL™ mark .

**Progress/NuSphere's Pirating of MySQL's Name, Mark and Goodwill**

39.     Instead of entering into good faith negotiations with MySQL AB, as contemplated by the Interim Agreement, Progress instead embarked on a course of action to usurp the MySQL™ mark and MySQL AB's property and goodwill for its own exclusive use and benefit.

40.     In September 2000, Progress, through its wholly-owned subsidiary, NuSphere, began to provide professional services and support for open source databases, including the MySQL™ Program.

41.     The Interim Agreement allowed Progress certain limited rights to use specific MySQL combination trademarks only during the life of the Interim Agreement, limited to "NuSphere MySQL," "Enhanced MySQL," and "Rocket MySQL," and allowed Progress to register these marks on behalf of MySQL AB.  In violation of the Interim Agreement, however, Progress/NuSphere has claimed exclusive ownership of the combination marks and have attempted to pirate the MySQL™ trademark.  On its website, its product packaging, and in press releases, (including press releases dated April 30, May 21, June 11 and June 18, 2001), NuSphere misrepresented that "NuSphere MySQL" is a trademark of NuSphere Corporation in the U.S. and other countries. On its website, its product packaging, and in press releases (including press releases dated April 30 and May 21, 2001), NuSphere misrepresented that "Enhanced MySQL" is a trademark of NuSphere Corporation in the U.S. and other countries.  Moreover, Progress/NuSphere markets its products with the combination mark "NuSphere MySQL Advantage," a combination mark it has never been authorized to use.

16

42.     Progress/NuSphere has issued numerous press releases that were false and contained material misrepresentations. Progress/NuSphere's claim that its product "Gemini" was incorporated into the MySQL™ Program misleads readers in believing that "Gemini" was incorporated into the MySQL™ Program by MySQL AB. MySQL AB has not released "Gemini" as part of the MySQL™ Program. Rather, NuSphere has created and markets a derivative work of the MySQL™ Program and wrongfully uses the MySQL™ mark to suggest that MySQL AB is the source or sponsor of that derivative work.

43.     The Interim Agreement confirmed that Progress, like any GPL Licensee, had the right under the GPL License to sell and distribute the MySQL™ Program subject to the terms of the GPL License. Progress/NuSphere has breached the Interim Agreement and the terms of the GPL License by distributing derivative works of the MySQL™ Program, including but not limited to "NuSphere MySQL" and "NuSphere MySQL Advantage," without making the underlying source code (for example, Gemini) available to all, as required by the GPL License. Moreover, Progress/NuSphere misrepresents that its products which contain closed source software are "seriously open software."

44.     The Interim Agreement gave MySQL AB the right to approve all public information and all press releases that concerned the relationship between the parties. The purpose of this provision was to prevent confusion in the marketplace by permitting MySQL AB to ensure that Progress/NuSphere's products, services and uses of the MySQL™ mark were fair, accurate and consistent with MySQL AB's high

standards.  Progress/NuSphere breached this provision by, among other things, repeatedly issuing press releases without first providing them to MySQL AB for review and approval, by issuing press releases over MySQL AB's objection and express disapproval, and by failing to provide MySQL AB with a copy of any Progress/NuSphere product release (such as the code, product packaging, manuals and other documentation).

45.    The Interim Agreement does not permit Progress to use and benefit from any MySQL AB property without making payment therefor.  Progress made three payments under the Interim Agreement, July 3, 2000, ($74,167); July 14, 2000 ($104,167), September 21, 2000 ($104,167).  No other payments have been made by Progress to MySQL AB under the Interim Agreement; however, Progress/NuSphere wrongly continues to use and benefit from the MySQL™ mark and combination marks, which it has pirated.

46.    On June 12, 2001, MySQL AB discovered that NuSphere had purchased the domain name "mysql.org".  Prior to NuSphere's purchase of the "mysql.org" domain name, Internet visitors to this website were automatically routed to MySQL AB's website, "mysql.com."

47.    NuSphere is now operating the "mysql.org" website.  NuSphere registered the "mysql.org" domain name with actual knowledge of MySQL AB's MySQL™ trademark.  At no time has NuSphere had the consent of MySQL AB to use the MySQL™ mark to register a domain name that incorporates the MySQL™ mark or operate its own website using the MySQL™ mark.  NuSphere is using the MySQL™

18

mark to divert and capture Internet traffic and customers. "mysql.org" infringes on MySQL AB's trademark rights. Among other things, NuSphere is using the infringing website to deliver products and services that are not owned by MySQL AB, including NuSphere's products and services, and to collect names and information about visitors to the site for its own commercial purposes. NuSphere's acquisition, registration and operation of the "mysql.org" domain name and website creates a likelihood of confusion as to the source, sponsorship, affiliation and/or endorsement of the "mysql.org" site and the products and services promoted therein. An internet visitor to the "mysql.org" website cannot discern the source or sponsor of that site from simply looking at the website. NuSphere's actions intentionally blur the lines between "mysql.org" and "mysql.com" and are likely to cause confusion in the marketplace.

48.     NuSphere has intentionally traded on the MySQL™ trademark and has confused consumers by purchasing the "mysql.org" domain name and using the www.mysql.org website to divert traffic from MySQL AB's own website, www.mysql.com, and to promote the goods and services of NuSphere and other third parties.

49.     Progress/NuSphere has pirated the MySQL™ trademark and goodwill in numerous other ways. For example, Progress/NuSphere has failed to pay an agreed-upon 10% royalty for the use of a certain MySQL™ logo (a copy of which is attached hereto as **Exhibit 3** and hereafter referred to as the "MySQL™ Logo") on NuSphere's product boxes. Nonetheless, Progress/NuSphere continues to place the MySQL Logo

on NuSphere packaging.  A copy of the NuSphere product box that displays the MySQL Logo is attached hereto as **Exhibit 4**.

50.     Moreover, Progress/NuSphere has wrongfully used the MySQL Logo on software it distributes.

51.     NuSphere agreed to pay MySQL AB for support services provided by MySQL AB's developers to various developers at NuSphere.  NuSphere has failed to pay MySQL AB for these services.

52.     Progress/NuSphere was required to enter into good faith negotiations to reach a final agreement with MySQL AB concerning the parties' business relationship. Progress/NuSphere made no meaningful effort to fulfill this obligation, notwithstanding MySQL AB's repeated requests that it do so.

53.     In light of the foregoing violations, on May 13, 2001, MySQL AB sent a letter to NuSphere demanding that it cease and desist all infringing activities, and that it make good faith efforts to reach a final agreement and resolution with MySQL AB by June 8th.  When NuSphere and Progress failed to make any meaningful effort to reach a final agreement, MySQL AB, on June 12, 2001, by counsel, sent a letter demanding that NuSphere cease and desist its unlawful conduct and formally terminating the Interim Agreement.  A copy of the May 13 and June 12 letters are attached hereto as **Exhibits 5 and 6, respectively.**

54.     Despite the transmission of the cease and desist letters, Progress/NuSphere has persisted in this course of unlawful conduct and continues to usurp MySQL AB's name, mark, and property for its own benefit, to cause confusion in

the marketplace, to engage in unfair and deceptive trade practices and to dilute the

value of the MySQL™ mark and goodwill.

## COUNT I
### (Federal Trademark Infringement)
### (Declaratory and Injunctive Relief, and Money Damages)

55.     Counter-Plaintiff repeats and realleges paragraphs 1 though 54, along

with the Introductory Statement, as if fully set forth herein.

56.     MySQL AB is the owner of the entire right, title and interest in the

MySQL™ mark, and has continuously used such trademark since well before Counter-

Defendants' use of the same or nearly identical trademark in the promotion and sale of

its products and services.

57.     Counter-Plaintiff's trademark and the goodwill of the business associated

therewith are of great and incalculable value.  MySQL AB's trademark and logo are

highly distinctive, and have become associated in the public mind with an open source

database and services of the very highest quality and reputation, with its source being

MySQL AB.

58.     Counter-Defendants have used MySQL AB's trademark in interstate

commerce, which conduct is without permission or authority of MySQL AB.

59.     Counter-Defendants' use of the MySQL™ trademark or MySQL™

combination marks is intended to enable them to trade upon the goodwill of the

MySQL™ mark and to create a likelihood of confusion among purchasers of MySQL

AB's products and support services.

60.     Counter-Defendants are intentionally and with knowledge infringing or threatening to infringe the MySQL trademark in violation of 15 U.S.C. § 1114.

61.     By reason of the foregoing, Counter-Defendants' activities have damaged and will continue to damage and irreparably injure MySQL AB.

62.     Counter-Plaintiff is without an adequate remedy at law and, unless Counter-Defendants are enjoined from engaging in the above-detailed activities, Counter-Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

63.     There exists an actual controversy of a justiciable nature between MySQL AB and Progress/NuSphere involving the rights of the parties to the use of their names, marks and logos, including, but not limited to, the MySQL™ mark, Enhanced MySQL™ mark, NuSphere MySQL™ mark, and Rocket MySQL™ mark.

64.     Antagonistic claims are present between the parties.  Litigation over these disputed claims has commenced.  A declaratory judgment by the Court will terminate this controversy.

### COUNT II
### (Federal Unfair Competition: False Designation)

65.     Counter-Plaintiff repeats and realleges paragraphs 1 through 64, along with the Introductory Statement, as if fully set forth herein.

66.     Counter-Defendants are using Counter-Plaintiff's MySQL™ mark, and certain combination marks and logos in interstate commerce, which conduct is without the permission or authority of MySQL AB.

67.    By using the MySQL™ mark and logo, and certain combination marks, Counter-Defendants have misrepresented and falsely described to consumers the origin and source of its products/services and has further created a likelihood of confusion among potential and ultimate purchasers as to the source of its products and services.

68.    By representing that "Gemini" was incorporated into the MySQL™ Program by MySQL AB, Counter-Defendants have misrepresented and falsely described to consumers the origin and source of its products/services and has further created a likelihood of confusion among potential and ultimate purchasers as to the source of its product.

69.    Said conduct constitutes a deceptive practice and/or unfair competition in interstate commerce in violation of 15 U.S.C. § 1125(a).

70.    By reason of the foregoing, Counter-Defendants' activities have damaged and will continue to damage and irreparably injure MySQL AB unless restrained by this Court.  Counter-Plaintiff has no adequate remedy at law.

## COUNT III
### (Violation of Federal Trademark Dilution Statute)

71.    Counter-Plaintiff repeats and realleges paragraphs 1 through 70, along with the Introductory Statement, as if fully set forth herein.

72.    MySQL AB owns the entire right, title and interest in the MySQL™ mark, and has continuously used such trademark since well before Counter-Defendants' use of the same or nearly identical trademark in the promotion and sale of its products.

73.     Through MySQL AB's longstanding and continuous use, advertising and publicity of the MySQL™ mark, said mark is a "famous" mark, which has acquired substantial goodwill and a distinctiveness in the channel of trade for MySQL AB's products and support services and in the mind of the consuming public.

74.     Because of the competition that exists in the marketplace for support services and other products related to the MySQL™ Program, the distinctive nature of the MySQL™ mark and logo, as promoted and displayed by MySQL AB, represents an important asset of MySQL AB that allows it to differentiate its products and services from those of its competitors.

75.     At all times relevant to the allegations herein and continuing through the present, Counter-Defendants have used the MySQL™ trademark and logo, or nearly identical marks, in interstate commerce to promote sales of products and services. Such conduct is without permission or authority of MySQL AB.

76.     Through these activities, Counter-Defendants willfully intended to trade on MySQL AB's superior, long-standing reputation and goodwill and to cause dilution of the famous MySQL™ mark and logo.

77.     Counter-Defendants' commercial use of Counter-Plaintiff's MySQL™ mark, or nearly identical marks, began after the MySQL™ mark had become "famous," causing dilution of the distinctive quality of the MySQL™ mark.

78.     By reason of the foregoing, the capacity of the "famous" MySQL™ mark to identify and/or distinguish the products and services of MySQL AB has been weakened.

79.     By reasons of the foregoing, Counter-Defendants' activities have damaged and will continue to damage and irreparably injure MySQL AB unless restrained by this Court. Counter-Plaintiff has no adequate remedy at law.

## COUNT IV
### (Common Law Trademark Infringement)

80.     Counter-Plaintiff repeats and realleges paragraphs 1 through 79, along with the Introductory Statement, as if fully set forth herein.

81.     Counter-Defendants are using the MySQL™ mark, and certain combination marks, in interstate commerce, which conduct is without the permission or authority of Counter-Plaintiff MySQL AB.

82.     Counter-Defendants' unauthorized use of the MySQL™ mark has created and creates a likelihood of confusion, mistake or deception as to the affiliation, connection or association of Counter-Defendants with MySQL AB.

83.     As a result, Counter-Defendants have infringed and continue to infringe upon MySQL AB's MySQL™ mark in violation of MySQL AB's rights under the common law.

84.     By reason of the foregoing, Counter-Defendants' activities have damaged and will continue to damage and irreparably injure Counter-Plaintiff MySQL AB.

85.     Counter-Plaintiff has no adequate remedy available at law.

## COUNT V
### (Breach of Contract)

86.     Counter-Plaintiff repeats and realleges paragraphs 1 through 85, along with the Introductory Statement, as if fully set forth herein.

87.    Progress entered into the Interim Agreement with MySQL AB, *inter alia*, to allow Progress to be a part of the announcement that the MySQL™ Program would be released for use via the GPL License in exchange for certain consideration to be paid by MySQL AB.

88.    Under the terms of the Interim Agreement, Progress was allowed to register certain combination trademarks limited to "NuSphere MySQL," "Enhanced MySQL," and "Rocket MySQL" on behalf of MySQL AB and to use these combination marks, subject to and during the life of, the Interim Agreement.

89.    The Interim Agreement confirmed that Progress had the right, like any GPL licensee, to distribute the MySQL™ Program under the terms of the GPL License.

90.    The Interim Agreement gave MySQL AB the right to approve all press releases that concerned the relationship between the parties.

91.    MySQL AB satisfied its contractual obligations by making Progress part of the GPL announcement and by performing all of its obligations under the Interim Agreement, including by using its good faith efforts to reach a final agreement.

92.    Progress/NuSphere materially breached the Interim Agreement by, *inter alia*, failing to enter into good faith negotiations with MySQL AB as contemplated by the Interim Agreement, by claiming exclusive ownership of certain MySQL™ combination marks and pirating the MySQL™ mark, by issuing numerous press releases that had either not been provided to or approved by MySQL AB, and by distributing a derivative work based on the MySQL™ Program without making the underlying source code available.

93.     Progress/NuSphere materially breached the Interim Agreement by using and benefiting from the MySQL™ mark, property and goodwill without making payments therefor.

94.     As a result of Progress/NuSphere's breaches of contract, MySQL AB has suffered damages, including but not limited the payment for use and benefit from the MySQL™ name, property and goodwill, and the loss of the benefit of the bargain made by the parties, in an amount exceeding no less than $2.5 million.

## COUNT VI
### (Unjust Enrichment)

95.     Counter-Plaintiff repeats and realleges paragraphs 1 through 94, along with the Introductory Statement, as if fully set forth herein.

96.     At Counter-Defendants' request and in reliance upon their assurances, MySQL AB allowed Progress a limited right to provide product support using the MySQL™ mark and allowed Progress to use certain combination trademarks and to register these combination trademarks on behalf of MySQL AB.

97.     Furthermore, MySQL AB provided support services to NuSphere.

98.     A benefit was conferred upon Counter-Defendants by MySQL AB.

99.     Although NuSphere promoted and marketed its products and services using certain MySQL™ combination marks, NuSphere did not compensate MySQL AB for the use of its trademark.

100.    On or about September 2000, NuSphere began to use MySQL's AB's mark and related combination marks without making payment therefor.

101.    MySQL AB's allowing Counter-Defendants' use of said marks conferred a benefit upon NuSphere/Progress.

102.    NuSphere/Progress was aware of, or had knowledge of, the benefits conferred upon it by MySQL AB as evidenced by its use of the MySQL combination marks in promoting, packaging and selling its products.

103.    NuSphere/Progress has accepted or retained these benefits under such circumstances as to make it inequitable for NuSphere/Progress to retain the benefit without making payment.

### COUNT VII
### (Quantum Meruit)

104.    Counter-Plaintiff repeats and realleges paragraphs 1 through 103, along with the Introductory Statement, as if fully set forth herein.

105.    At Counter-Defendants' request and in reliance upon their assurances, MySQL AB allowed Progress  a limited right to provide product support using the MySQL™ mark and allowed Progress a limited right to use certain combination trademarks and to register these combination trademarks on behalf of MySQL AB

106.    Furthermore, MySQL AB provided support services to NuSphere.

107.    The value of these benefits to Counter-Defendants exceeds $2.5 million.

108.    Counter-Defendants accepted, used and enjoyed the services provided by MySQL AB.

109.    MySQL AB's services were rendered under such circumstances that reasonably notified Counter-Defendants that MySQL AB, in performing such services, expected to be paid by Progress/NuSphere.

## COUNT VIII
### Breach of Contract (GPL License)

110.    Counter-Plaintiff repeats and realleges paragraphs 1 through 109, along with the Introductory Statement, as if fully set forth herein.

111.    MySQL AB is the licensor of the MySQL™ Program.  MySQL AB makes the MySQL™ Program available under the GPL License.

112.    Progress/NuSphere is a licensee of the MySQL™ Program, under the terms of the GPL License.

113.    By modifying or distributing the MySQL™ Program (or any work based on the MySQL™ Program), Progress/NuSphere indicated their acceptance of the GPL License and all its terms and conditions for copying, distributing or modifying the MySQL™ Program or works based on it.

114.    The GPL License grants licensees rights to modify their copies of programs, form derivative works based on the programs, and to copy and distribute such derivative works, subject to compliance with the terms and conditions of the GPL License.

115.    Progress/NuSphere has created one or more derivative works of their copy or copies of the MySQL™ Program or portions of it.

116.    Progress/NuSphere has materially breached the GPL License by distributing derivative works based on the MySQL™ Program without providing "the complete corresponding machine-readable source code," or, "a written offer, valid for at least three years, to give any third party . . . a complete machine-readable copy of the corresponding source code."

117.    As a result of Progress/NuSphere's breaches of the GPL License, MySQL AB has suffered damages.

118.    Progress/NuSphere's copying, modification, and/or distribution of the MySQL™ Program and derivative works thereof in violation of the GPL License automatically terminated Progress/NuSphere's rights under the GPL License.

## COUNT IX
### Violation of M.G.L. c. 93A § 11

119.    Counter-Plaintiff repeats and realleges paragraphs 1 through 118, along with the Introductory Statement, as if fully set forth herein.

120.    The conduct of the Counter-Defendants, as alleged above and which occurred within Massachusetts, constitutes unfair and deceptive acts or practices within the meaning of M.G.L. c. 93A § 2.

121.    Counter-Defendants' violation of M.G.L. c. 93A § 11 has caused Counter-Plaintiff to suffer monetary loss in the conduct of its business or trade.

122.    Counter-Defendants' use or employment of the unfair and deceptive acts alleged above has been a willful or knowing violation of M.G.L. c. 93A §2.

**PRAYER FOR RELIEF**

WHEREFORE, MySQL AB demands judgment against Progress/NuSphere and award the following relief:

A.   Enter declarations that:

    (i)   Progress/NuSphere's use of the MySQL™ mark and logo and MySQL™ combination marks, including, but not limited to, "NuSphere MySQL," "Enhanced MySQL," "Rocket MySQL," and "NuSphere MySQL Advantage" infringes MySQL AB's trademark rights and dilutes the MySQL™ mark and related goodwill;

    (ii)   Progress/NuSphere's promotion and sale of its products and services using the MySQL™ mark and logo and MySQL™ combination marks, including, but not limited to, "NuSphere MySQL," "Enhanced MySQL," "Rocket MySQL," and "NuSphere MySQL Advantage" infringes MySQL AB's trademark rights and dilutes the MySQL™ mark and related goodwill;

    (iii)   The Interim Agreement terminated due to the material breaches of Progress/NuSphere;

    (iv)   Progress/NuSphere violated the GPL License and thus, their rights under the GPL License were automatically terminated.

B.   Preliminarily and Permanently enjoin:

    (i)   Progress/NuSphere from using the MySQL™ mark and logo and MySQL™ combination marks, including, but not limited to, "NuSphere

MySQL," "Enhanced MySQL," "Rocket MySQL," and "NuSphere MySQL Advantage."

(ii)     Progress/NuSphere's from promoting and selling any products and services using the MySQL™ mark and logo and MySQL™ combination marks, including, but not limited to, "NuSphere MySQL," "Enhanced MySQL," "Rocket MySQL," and "NuSphere MySQL Advantage";

(iii)     Progress/NuSphere from copying, modifying, sublicensing, or distributing the MySQL™ Program.

C.     Order Progress/NuSphere to account to MySQL AB for all revenues, gains, profits and advantages derived either directly or indirectly as a result of its infringement, dilution and other wrongful acts and that MySQL AB be awarded recovery of all revenues/profits arising from Progress/NuSphere's infringement, dilution and other wrongful acts;

D.     Award compensatory and punitive damages, along with pre-judgment interest, in such amount as shall be proven at trial;

E.     Award a trebling, pursuant to 15 U.S.C. §1117 and by reason of the willfulness of Progress/NuSphere's acts, of Progress/NuSphere's profits or MySQL AB's damages, whichever is greater;

F.     Order, pursuant to 15 U.S.C. §§1116 and 1118, that Progress/NuSphere to deliver up to be impounded during the pendency of this action all infringing goods in Progress/NuSphere's possession or control;

G.     Order that Progress/NuSphere recall all products that infringe, dilute or

in any way violate MySQL AB's trademark rights from distributors, retailers, customers

and other parties who have received such products and that Progress/NuSphere

further advise the consuming public of such recall in trade publications;

H.     Award the costs of this action and reasonable attorneys' fees pursuant to

15 U.S.C. § 1117; and

I.     Such other and further relief at law or in equity as this Court may deem

just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Counter-Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

Gary C. Crossen, Esquire  (BBO #106580)
Brendan P. Mitchell (BBO #633835)
Rubin & Rudman, LLP
50 Rowes Wharf
Boston, Massachusetts 02110
(617) 330-7036
*Attorneys for Counter-Plaintiff MySQL AB*

Counsel Seeking Pro Hac Vice Admission:

William F. Ryan, Jr.
Lisa A. Kershner
Steven E. Tiller
Ilana Subar
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland  21202-1626
(410) 347-8700
*Attorneys for Counter-Plaintiff MySQL AB*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _11th_ day of July, 2001, a copy of the foregoing Counterclaim was served by facsimile and by first class mail, postage prepaid to:

> Peter Brown
> Catherine M. McGrath
> Mark Schonfeld
> Andres N. Madrid
> Brown, Raysman, Millstein, Felder & Steiner, L.L.P.
> 900 Third Avenue
> New York, New York 10022
>
> *Attorneys for Plaintiffs, Progressive Software Corporation*
> *and NuSphere Corporation*

_____
Gary C. Crossen

1358461.6