## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PROGRESS SOFTWARE     *
CORPORATION and NUSPHERE
CORPORATION,     *

     Plaintiffs,     *

v.     *     **Civil Action No.: 01-CV-11031 (PBS)**

MySQL AB, T.C.X. DATAKONSULT AB,*
DAVID AXMARK, MICHAEL
WIDENIUS, and JOHN DOE     *
COPORATION,
    *
     Defendants.
    *

   *      *      *      *      *      *      *      *      *      *      *

## ANSWER OF MySQL AB, DAVID AXMARK, AND MICHAEL WIDENIUS TO AMENDED COMPLAINT

MySQL AB ("MySQL AB"), David Axmark ("Axmark"), and Michael Widenius ("Widenius") (collectively "Defendants"), by their undersigned counsel, hereby answer the Amended Complaint filed by Progress Software Corporation ("Progress") and NuSphere Corporation ("NuSphere").

### NATURE OF THE ACTION

1.      Paragraph 1 of the Complaint describes Plaintiffs' purported causes of action, as to which Defendants deny any and all liability.

Further answering paragraph 1, Defendants adopt and incorporate by reference their response to paragraph 9.



2.      Answering paragraph 2 of the Complaint, Defendants adopt and incorporate by reference their response to paragraph 1 herein.  Further answering, Defendants state that on or about June 21, 2000, MySQL AB entered into a preliminary agreement with Progress (the "Interim Agreement"), which agreement is attached as **Exhibit 2** to the Counterclaim against Progress/NuSphere, adopted and incorporated by reference.

Further answering paragraph 2, Defendants state that prior to entering into any agreement with Progress, they had decided to release the MySQL™ Program under a form of open source license known as the GNU General Public License (the "GPL License"), attached as **Exhibit 1** to the Counterclaim.  Further, prior to entering into any agreement with Progress, MySQL AB communicated to Progress its decision to release the MySQL™ Program under the GPL License *whether or not any agreement with Progress was reached.*

Further responding, Defendants state that the release of the MySQL™ Program under the GPL License provided a tremendous business opportunity to Progress if MySQL AB permitted Progress to participate in and be a part of this announcement and release.

Further answering, Defendants state that prior to the Interim Agreement, the parties had exchanged proposals concerning a prospective business relationship.  Throughout these discussions, Progress articulated a series of proposals, all of which would have had the effect of conferring upon Progress exclusive rights to the MySQL™ mark and name.  MySQL AB rejected all such proposals as inconsistent

with its business plan and vision.   The parties never resolved this fundamental difference.

On the eve of MySQL AB's release of the MySQL™ Program under the GPL License, the parties entered into the Interim Agreement.   The Interim Agreement allowed Progress to participate in the GPL announcement and provides for certain payments to be made by Progress.

Specifically, the Interim Agreement provides that on the day of the GPL announcement, Progress would make a first payment of $74,167 ($104,167 - $30,000 prepayment) and would announce this as the first of a series of payments up to $2.5 million.   Under the Interim Agreement, Progress agreed to continue making these payments at the level of $104,167 through at least August, 2000.   Thereafter, additional payments by Progress and other arrangements were to be governed by a further anticipated final agreement between the parties.

Defendants are without knowledge and information and therefore deny the allegation in paragraph 2 that Plaintiffs acted in reliance upon the Interim Agreement in committing and expending many millions of dollars "in carrying out its business plan for its newly-created MySQL-related venture."   Defendants further deny that Plaintiffs could have reasonably so relied as alleged.

Plaintiff NuSphere was formed prior to the inception of the Interim Agreement.   The Interim Agreement, by its terms, contemplates that the parties would attempt to negotiate a definitive final agreement concerning their prospective relationship, the terms of which were then unknown.   Further responding, Defendants

state that the anticipated life of the Interim Agreement was approximately three months.

Further answering, Defendants deny that the Interim Agreement grants Plaintiffs the right to use the MySQL™ mark or brand in perpetuity. Rather, the Interim Agreement granted Progress the limited right to use the "MySQL" trademark and certain specified combination marks limited to "NuSphere MySQL," "enhanced MySQL", and "Rocket MySQL" during the life of the Interim Agreement and to register these combination marks on behalf of MySQL AB.

Further answering, Defendants state the MySQL™ Program was the most widely-used open source database of its kind long before the date of the Interim Agreement. Thus, Defendants deny that the MySQL™ Program needed any "credibility."

3.    Answering paragraph 3, Defendants adopt and incorporate by reference their answers to paragraphs 1 and 2 herein. Responding further, Defendants state that the Interim Agreement requires the parties to make good faith efforts to reach a final, definitive agreement; otherwise, the Interim Agreement may be terminated. At the time the Interim Agreement was negotiated and accepted, it was unknown whether the parties in fact would be able to reach a final agreement. Defendants admit that no final agreement was reached. Defendants deny that they have ever competed unfairly with the Plaintiffs or have ever had any intention of doing so. Further responding, Defendants adopt and incorporate by reference the allegations set forth in the Counterclaim.

498376_1                                    4

4.      The allegations in paragraph 4 are denied.  Further responding, Defendants adopt and incorporate by reference the allegations set forth in the Counterclaim.

5.      Answering paragraph 5, Defendants admit Plaintiffs paid $85,000 to MySQL AB (successor by name change to TCX DataKonsult AB).  Defendants admit that a "NuSphere MySQL" logo appeared on MySQL AB's website, mysql.com, but deny that MySQL AB breached any agreement and deny that MySQL AB "has acted with malicious intent and in flagrant disregard of their express obligations under the Advertising Agreement."  Defendants state that Plaintiffs had no right to continued display of a "NuSphere MySQL" logo on the mysql.com website in violation of the Interim Agreement and MySQL AB's rights.

## THE PARTIES

6.      Paragraph 6 is admitted.

7.      Paragraph 7 is admitted.

8.      Paragraph 8 of the Amended Complaint contains no allegations of fact, and therefore requires no answer.

9.      Defendants state that MySQL AB (registered in Sweden under number 556232-7105), an original named defendant in this case, is the successor by name change to TCX DataKonsult AB.  Defendants have previously provided Plaintiffs with affidavits and supporting documentation regarding this transaction which became effective on January 23, 2001.  To the extent allegations herein relate to the company

498376_1                                         5

formerly known as TCX DataKonsult AB, MySQL AB as successor by name change responds herein.

Defendants further state that MySQL AB (registered in Sweden under number 556232-7105), an original named defendant in this case, underwent a corporate restructuring during 2001. As a result of the restructuring, all assets and liabilities related to the MySQL database server, including without limitation the copyright in the MySQL database server and the various MySQL trademarks are now owned by a new company called MySQL AB (registered in Sweden under number 556613-4531).

Responding further, Defendants admit that MySQL AB (registered in Sweden under number 556613-4531), is a corporation organized and existing under the laws of Sweden, but deny all other allegations in paragraph 9.

10.     Answering paragraph 10, Defendants state that T.C.X. DataKonsult AB ("TCX") is a corporation organized under the laws of Sweden, but deny any present affiliation between TCX and MySQL AB. Further answering, Defendants state that Defendant MySQL AB was formerly known as TCX DataKonsult AB.

11.     Answering paragraph 11, Defendants admit that David Axmark is a citizen of Sweden, and was a co-founder and Chief Executive Officer of MySQL AB (registered in Sweden under number 556232-7105) from January 2001 until early October 2001. Mårten Mickos is the Chief Executive Officer of MySQL AB (registered in Sweden under number 556613-4531).

12.     Answering paragraph 12, Defendants admit that Michael Widenius is a citizen of Finland, and was the Chief Technology Officer of MySQL AB (registered in Sweden under number 556232-7105), an original named defendant in this case. Mr. Widenius is the current Chief Technology Officer of MySQL AB (registered in Sweden under number 556613-4531).

13.     Answering the allegations in paragraph 13, concerning the unidentified John Doe corporation, Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of these allegations, and accordingly, deny same.

14.     Paragraph 14 of the Amended Complaint contains no allegations of fact and therefore requires no answer.

## JURISDICTION AND VENUE

15.     Answering paragraph 15, Defendants adopt and incorporate by reference their answers to paragraphs 6, 7, 9, 11, 12 and 13 herein. Further responding, Defendants state that the remaining allegations in paragraph 15 state only legal conclusions to which no answer is required. To the extent an answer may be required, the allegations are denied.

16.     Paragraph 16 is denied.

17.     Paragraph 17 states a legal conclusion requiring no answer. To the extent an answer may be required, paragraph 17 is denied.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. MySQL DATABASE SOFTWARE

18.     Answering paragraph 18, Defendants admit that the source code underlying the MySQL™ Program (the "MySQL Source Code") is a "Structured Query Language" database management system.  To the extent paragraph 18 asserts, or is intended to imply, that the MySQL™ Source Code is a "common, standardized language used to access information stored in databases," it is denied.

19.     Answering paragraph 19, Defendants state that the MySQL™ Source Code has been available for sale to the public since at least 1996.  Further responding, the MySQL™ Source Code was first released subject to the terms of the GPL License beginning on June 28, 2000, at which time the MySQL Source Code for the MySQL™ Program became accessible on the Internet, subject to the terms and conditions of the GPL License. (Prior to June 28, 2000, the Source Code for the MySQL™ Program was available on the Internet subject to the terms and conditions of other open source licensing arrangements.)  Defendants deny that release of the MySQL™ Source Code under the GPL License means that anyone can use, modify or distribute the Source Code without restriction.  The restrictions imposed by the GPL License are set forth therein.  A copy of the GPL License under which MySQL™ Source Code was released in June 2000 is attached as **Exhibit 1** to the Counterclaim against Progress/NuSphere, and is adopted and incorporated herein by reference.  Responding further to paragraph 19, Defendants state that one of the purposes of the GPL License is

498376_1                                  8

to facilitate ongoing software development and improvement.  Defendants further state that another purpose of the GPL License is to enable MySQL AB to control derivative works.  Defendants deny, however, that release of the MySQL™ Program under the GPL License in June, 2000 has resulted in proposed "improvements" and/or "fixes," of the MySQL™ Source Code by users.

Further answering paragraph 19, Defendants state that release of MySQL™ Source Code under the GPL License is expected to vastly expand distribution and use of the MySQL™ Source Code, and thereby vastly expand the market for support services related to the MySQL™ Program.  Support services are provided by MySQL AB on a fee basis.  All other allegations in paragraph 19 of the Amended Complaint are denied.

20.    The allegations in paragraph 20 are denied.

21.    Answering paragraph 21, Defendants admit that "the MySQL Code is written in C and C++", that these languages are common programming languages and that the MySQL™ Source Code *is* "widely popular."  Defendants deny that use of the C and C++ programming languages enables programmers to modify the MySQL™ Source Code easily or readily.

Further responding to paragraph 21, Defendants state that software developers and/or users may frequently discuss their use of the MySQL™ Source Code on public message boards.  Answering further, Defendants state that few individuals have the knowledge or expertise necessary to develop "enhancements" based on the Code.  Defendants are without knowledge or information as to whether an Internet

search by or at the behest of Plaintiffs yielded "2.6 million matches" with the term

"MySQL." Responding further, Defendants state that such Internet matches are a direct

outgrowth of efforts by MySQL AB and its founders in developing and promoting use

of the Code for the MySQL™ Program.

## B. THE MySQL AGREEMENT BETWEEN THE PARTIES

22.     The allegations in paragraph 22 of the Amended Complaint are

denied.     Further responding, Defendants state that during the period from

approximately February through June 21, 2000, David Axmark and Michael Widenius

communicated with representatives of Progress concerning a prospective business

relationship between Progress and MySQL AB, and the form such relationship might

take. Defendants deny that these discussions or negotiations were related in any way to

"clarification" of MySQL's AB trademark rights, which at all times were clearly

understood and accepted by Progress.

23.     Answering paragraph 23, Defendants adopt and incorporate by

reference their answer to paragraph 2 herein concerning the payments required by

Progress under the Interim Agreement.  Further responding, Defendants state that

during the life of the Interim Agreement, payments were to be made by Progress in

monthly installments in the amount of $104,167.00. Progress was permitted during the

life of the Interim Agreement to provide support for the MySQL™ Source Code using

the MySQL™ mark in a limited fashion.  Further responding to the allegations in

paragraph 23, Defendants state that the "enterprise level support," referenced in

paragraph 23 of the Amended Complaint, is unrelated to "ease of use" of the MySQL™

498376_1                                    10

Source Code by the user.  Further answering, Defendants state that prior to entering into the Interim Agreement, MySQL AB (formerly known as TCK DataKonsult AB) already was providing enterprise level and other support for the MySQL™ Source Code in the corporate arena.  Defendants deny the remaining allegations contained in paragraph 23.

24.    Answering paragraph 24, Defendants state that Progress paid $30,000.00 prior to the inception of the Interim Agreement in order to induce MySQL AB to continue negotiations of a prospective business relationship with Progress. Defendants admit that after the Interim Agreement was accepted, an additional payment of $74,167.00 was made by Progress.

25.    Answering paragraph 25, Defendants admit that Progress made payments totaling $312,501.00, but deny that this sum constitutes the total sum due from Progress under the Interim Agreement.  Accordingly, the allegation that Plaintiffs made the "requisite" additional payments under the Interim Agreement is denied.

26.    Answering paragraph 26, Defendants admit that the MySQL™ Source Code was released under the GPL License on June 28, 2000.  Further responding, Defendants state that MySQL AB had decided to release the MySQL™ Source Code under the GPL License, whether or not any agreement was reached with Progress and informed Progress of that decision prior to the existence of an Interim Agreement. Accordingly, Defendants deny that the Interim Agreement requires MySQL AB to release the MySQL™ Source Code under the GPL License, but rather reflects MySQL AB's prior decision to do so.

498376_1                                    11

27.    Answering paragraph 27, Defendants admit that paragraph 4 of the Interim Agreement confirms that Progress has the right to sell and distribute the MySQL™ Code subject to the terms and conditions of the GPL License, just as and to the same extent as all GPL licensees are permitted to sell and distribute the MySQL Source Code, subject to the terms and conditions of the GPL License. Defendants deny that paragraph 4 of the Interim Agreement grants Progress the right to sell and distribute the MySQL™ Code other than in strict accordance with the terms of the GPL License.

28.    Defendants admit the allegations in paragraph 28, except that Defendants deny that the Interim Agreement confer such rights in perpetuity. Further answering, Defendants state that the Interim Agreement, by its terms, contemplates that the parties would negotiate a further final agreement. Defendants further state that the anticipated life of the Interim Agreement was three months, and that the terms under which Progress would be permitted to obtain, distribute or publish any MySQL™ documentation thereafter were to be governed by the terms of the anticipated final agreement.

29.    Paragraph 29 is denied. Further answering, Defendants state that the Interim Agreement allowed Progress to use certain combination trademarks limited to "NuSphere MySQL," and "enhanced MySQL" and "Rocket MySQL," during the life of the Interim Agreement, and to register these combination marks on behalf of MySQL AB. Defendants deny that the Interim Agreement conferred on Progress any right to use these combination marks in perpetuity or to register these combination marks to or

in the name of Progress and/or Nusphere in the absence of a final agreement that so provided.

## C. FORMATION OF NUSPHERE

30.    The allegations in paragraph 30 are denied.  Further responding, Defendants adopt and incorporate by reference their answer to paragraph 2 herein. Further answering, Defendants deny that NuSphere was created for the purpose of "provid[ing] commercial support, consulting, and training for customers deploying the MySQL Code . . .", but rather, for the purpose of providing commercial support for open source software products generally.

31.    Answering paragraph 31, Defendants adopt and incorporate by reference their answer to paragraph 30 of the Amended Complaint as set forth herein. Further answering, Defendants state that the website "mysql.com" included a press release concerning NuSphere.

32.    Answering paragraph 32, Defendants adopt and incorporate by reference their answer to paragraphs 30 and 31 of the Amended Complaint as set forth herein. Further answering, Defendants deny that Plaintiffs "invested well over $6 million and hired approximately 20 full-time personnel ... in reliance on the MySQL Agreement."

33.    Answering paragraph 33, Defendants state that the website "mysql.com" included a press release dated September 22, 2000.  Defendants further state that the press release dated September 22, 2000 speaks for itself and therefore deny all allegations inconsistent therewith that are set forth in paragraph 33 of the Amended

498376_1                                    13

Complaint. Further answering, Defendants state that said press release was posted in anticipation of and based upon the expectation that Progress would negotiate and execute a final agreement providing the terms of a long-term business relationship between the parties as provided in the Interim Agreement.

34.     Defendants admit that during the period from approximately September 2000 to July 2001, MySQL AB's website, mysql.com, contained the statement that "NuSphere MySQL is an enhanced distribution of the leading open source database MySQL." Defendants state that Defendants continued to assist NuSphere develop its business in various ways through the spring of 2001 based upon its understanding and expectation that Progress would negotiate in good faith a final agreement as provided in the Interim Agreement. Further answering, Defendants state that Plaintiffs led MySQL AB to believe that NuSphere was sincere in its desire to negotiate and finalize an agreement with MySQL AB. Defendants further state that the mysql.com website speaks for itself and therefore deny all allegations inconsistent therewith that are set forth in paragraph 34 of the Amended Complaint.

D.     **THE ADVERTISING AGREEMENT**

35.     Answering paragraph 35, Defendants adopt and incorporate by reference their response to paragraphs 1-34 herein. Further answering, Defendants admit that MySQL AB issued an invoice in October 2000 and that Plaintiffs paid $85,000 to MySQL AB (successor by name change to TCX DataKonsult AB). The invoice speaks for itself and therefore deny all allegations inconsistent therewith that are set forth in paragraph 35 of the Amended Complaint. Defendants admit that "NuSphere MySQL"

498376_1                                    14

appeared on MySQL AB's website, mysql.com, but deny that MySQL AB breached any "Agreement". Defendants state that Plaintiffs had no right to continued display of "NuSphere MySQL" on the mysql.com website in violation of the Interim Agreement and MySQL AB's rights.

36.    Answering paragraph 36, Defendants adopt and incorporate by reference their response to paragraphs 35 herein.

37.    Answering paragraph 37, Defendants adopt and incorporate by reference their response to paragraphs 35 and 36 herein. Defendants further state that the mysql.com website speaks for itself and therefore deny all allegations inconsistent therewith that are set forth in paragraph 37 of the Amended Complaint.

38.    Answering paragraph 38, Defendants adopt and incorporate by reference their response to paragraphs 35-37 herein. Defendants further state that clicking on the "NuSphere MySQL" logo on MySQL AB's website, mysql.com, activated a hyperlink to NuSphere's website, nusphere.com.

39.    Defendants are without knowledge or information as to whether "a significant number of click-throughs to NuSphere's web site nusphere.com came from the NuSphere MySQL Logo on mysql.com," and accordingly, deny same.

40.    Answering paragraph 40, Defendants admit that on or about June 12, 2001, MySQL AB removed the "NuSphere MySQL" logo from the mysql.com website. Answering further, Defendants state that NuSphere had no right to continued display of the "NuSphere MySQL" logo on the mysql.com website. Defendants further

deny that the "NuSphere MySQL" logo was removed "in violation of the Advertising Agreement."

41.    Answering paragraph 41, Defendants admit that Plaintiffs requested that the "NuSphere MySQL" logo be put back on the mysql.com website, but deny the remaining allegations in paragraph 41.

42.    Answering paragraph 42, Defendants admit that on or about June 15, 2001, MySQL AB put the "NuSphere MySQL" logo back on the mysql.com website. Defendants deny the remaining allegations in paragraph 42.

43.    Answering paragraph 43, Defendants admit that on or about July 11, 2001, MySQL AB removed the "NuSphere MySQL" logo from the mysql.com website.  Defendants deny that the "NuSphere MySQL" logo was removed "in violation of the Advertising Agreement."

44.    Answering paragraph 44, Defendants state that a letter dated July 18, 2001 was sent to counsel for Defendants and state that the letter speaks for itself and therefore deny all allegations inconsistent therewith.

45.    Answering paragraph 45, Defendants state that a letter dated July 19, 2001 was sent to counsel for Plaintiffs and state that the letter speaks for itself and therefore deny all allegations inconsistent therewith.

46.    The allegations in paragraph 46 of the Amended Complaint are denied. Responding further, Defendants adopt and incorporate by reference their response to paragraphs 1-45 herein.

47.     The allegations in paragraph 47 of the Amended Complaint are denied. Responding further, Defendants adopt and incorporate by reference their response to paragraphs 1-46 herein.

48.     The allegations in paragraph 48 of the Amended Complaint are denied. Responding further, Defendants adopt and incorporate by reference their response to paragraphs 1-47 herein.

49.     The allegations in paragraph 49 of the Amended Complaint are denied. Responding further, Defendants adopt and incorporate by reference their response to paragraphs 1-48 herein.

E.     **DEFENDANTS' APPLICATION FOR REGISTRATION OF "ENHANCED MYSQL"**

50.     Answering paragraph 50, Defendants admit that, consistent with its ownership rights, on or about May 4, 2001, MySQL AB filed an intent to use application for registration of the mark "Enhanced MySQL" in International Class 42 for computer software and related user and training manuals and documentation, as further set forth in the application.

51.     The allegations in paragraph 51 of the Amended Complaint are denied. Responding further, Defendants adopt and incorporate by reference their response to paragraphs 1-50 herein.

F.     **PLAINTIFFS' BUSINESS RELATIONSHIP WITH POLYCON AB**

52.     Answering paragraph 52, Defendants adopt and incorporate by reference their answer to paragraph 28 of the Amended Complaint as set forth herein.

Further answering, Defendants state that the anticipated life of the Interim Agreement was three months, and that the terms under which Progress would be permitted to obtain, distribute or publish any MySQL documentation thereafter were to be governed by the terms of the anticipated final agreement.

53.    Defendants admit that Polycon is a corporation organized under the laws of Finland, but deny the remaining allegations in paragraph 53.

54.    Answering paragraph 54, Defendants admit that Polycon developed training material related to the MySQL™ Program for the purpose of providing education and instruction on a par with courses offered for competitors' products.    Defendants admit that Polycon began providing training related to the MySQL™ Program beginning in September 2000.   Defendants deny the remaining allegations in paragraph 54.

55.    Answering paragraph 55, Defendants state that Polycon entered into a contract with NuSphere to provide training materials to NuSphere.   Defendants deny the remaining allegations in paragraph 55 of the Amended Complaint.

56.    Answering paragraph 56, Defendants deny that "Polycon granted NuSphere exclusive rights to provide Official MySQL Training (and all materials related thereto) in the Americas" as alleged.   Further answering, Defendants are without knowledge or information sufficient to form a belief as to the payments NuSphere is or may be required to make to Polycon and accordingly, deny these allegations.

498376_1                                              18

57.     Answering paragraph 57, Defendants adopt and incorporate by reference their answers to paragraphs 53 through 56 of the Amended Complaint, as set forth herein.  Further answering, Defendants state that  MySQL AB is aware that there is a contractual relationship between Polycon and NuSphere.

58.     Answering paragraph 58, Defendants admit that Mr. Kaj S. Arnö is a co-founder of Polycon and was its Chief Executive Officer.  Further responding, Defendants admit that Mr. Arnö has followed the development of the MySQL™ Program, which was written primarily by Michael Widenius, but deny that Mr. Arnö is "quite proficient" in the MySQL™ Source Code.  Further responding, Defendants state that Mr. Arnö left Polycon Ab to assume a position with Oy Smart Words Ab.  MySQL AB recently acquired Oy Smart Words Ab.  Defendants admit that as a result, MySQL AB announced that Mr. Arnö and other personnel had joined the company and that Mr. Arnö has been appointed a Vice President.

59.     The allegations in paragraph 59 are denied.

60.     Answering paragraph 60, Defendants adopt and incorporate by reference their answers to paragraphs 58 and 59.  Defendants deny that MySQL AB hired Mr. Arnö directly from Polycon.  Responding further, Defendants admit that Mr. Olivier Beutels sent e-mails to many recipients regarding "Official MySQL Training" and state that any such e-mails speak for themselves and therefore deny all allegations inconsistent therewith.

61.     The allegations in paragraph 61 of the Amended Complaint are denied.

## G.   THE CEASE AND DESIST LETTER

62.   Responding to the allegations in paragraphs 62, Defendants admit that MySQL AB, through counsel, advised Senior Counsel to NuSphere, concerning the violations of MySQL AB's rights, as detailed in counsel's letter of June 12, 2001.  Further answering, Defendants state that counsel's letter of June 12, 2001, attached as Exhibit E to the Counterclaim, adopted and incorporated by reference, speaks for itself.

63.   Answering paragraph 63, Defendants adopt and incorporate by reference their answer to paragraph 62 of the Amended Complaint, as set forth herein. Defendants admit that the referenced letter dated June 12, 2001 contained the quoted statement, along with other statements.

64.   Paragraph 64 is a statement of Plaintiffs' opinions and/or intentions, as to which Defendants are without knowledge.  Accordingly, paragraph 64 is denied.

## H.   MISLEADING REPRESENTATIONS BY MYSQL

65.   Answering paragraph 65, Defendants admit that MySQL AB posted a page on its website, mysql.com, answering "frequently asked questions" on the dispute between MySQL AB and Progress/NuSphere.  Defendants state that the FAQ speaks for itself and therefore deny all allegations inconsistent therewith.

66.   Answering paragraph 66, Defendants state that MySQL AB maintains a public email list on which users can post proposed bug fixes or other source code suggestions.  MySQL AB considers any proposed fixes or changes to the MySQL™ Program that are posted to this public list on the merits of each proposal.  Defendants

498376_1                                              20

state that in or about August 2001 MySQL AB considered and adopted in part approximately 50 lines of code that had been proposed for the MySQL™ Program by Progress/NuSphere developers. The detailed description of all changes or additions to the MySQL™ Program is available at the "bitkeeper.com" website, which speaks for itself. Defendants deny the remaining allegations in paragraph 66 of the Amended Complaint.

67.     Answering paragraph 67, Defendants adopt and incorporate by reference their answer to paragraph 66 herein.

68.     The allegations in paragraph 68 are denied. Answering further, Defendants adopt and incorporate by reference their answer to paragraphs 65-66 herein.

69.     The allegations in paragraph 69 are denied.

### FIRST CAUSE OF ACTION
### Breach of MySQL Agreement
### (Against All Defendants)

70.     Defendants MySQL AB, David Axmark and Michael Widenius adopt and incorporate by reference their answers to paragraphs 1 through 69 of the Amended Complaint as if set forth fully in response to paragraph 70 of the Amended Complaint.

71.     Defendants deny that they breached the MySQL Agreement as alleged in paragraph 71 .

72.     Defendants deny the allegations set forth in paragraph 72 of the Amended Complaint.

### SECOND CAUSE OF ACTION
### Breach of Advertising Agreement
### (Against Defendant TCX)

73.     MySQL AB (as successor by name change to TCX) adopts and incorporates by reference its answers to paragraphs 1 through 72 of the Amended Complaint as if set forth fully in response to paragraph 73 of the Amended Complaint.

74.     Defendant MySQL AB denies the allegations set forth in paragraph 74 of the Amended Complaint.

75.     Defendant MySQL AB denies the allegations set forth in paragraph 75 of the Amended Complaint.

### THIRD CAUSE OF ACTION
### Tortious Interference With Business Relationship
### (Against Defendant MySQL AB)

76.     MySQL AB adopts and incorporates by reference its answers to paragraphs 1 through 75 as if set forth fully herein in response to paragraph 76 of the Amended Complaint.

77.     The allegations in paragraph 77 are denied.

78.     The allegation in paragraph 78 is denied.

### FOURTH CAUSE OF ACTION
### Intentional Interference With Performance of Contract
### (Against Defendant MySQL AB)

79.     MySQL AB adopts and incorporates by reference its answers to paragraphs 1 through 78 as if set forth fully in response to paragraph 79 of the Amended Complaint.

498376_1                                    22

80.    MySQL AB denies the allegations in paragraph 80 of the Amended Complaint.

81.    MySQL AB denies the allegations contained in paragraph 81 of the Amended Complaint.

### FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(Against All Defendants)**

82.    Defendants MySQL AB, David Axmark and Michael Widenius adopt and incorporate by reference their answers to paragraphs 1 through 81 of the Amended Complaint as if set forth fully herein in response to paragraph 82 of the Amended Complaint.

83.    The allegations in paragraph 83 of the Amended Complaint are denied.

84.    The allegations in paragraph 84 of the Amended Complaint are denied.

85.    The allegations in paragraph 85 of the Amended Complaint are denied.

### SIXTH CAUSE OF ACTION
**Unjust Enrichment**
**(Against Defendant TCX)**

86.    MySQL AB (as successor by name change to TCX) adopts and incorporates by reference its answers to paragraphs 1 through 85 of the Amended Complaint as if set forth fully in response to paragraph 86 of the Amended Complaint.

Case 1:01-cv-11031-PBS   Document 60   Filed 02/22/02   Page 24 of 29

87.     Answering paragraph 87, MySQL AB admits that Plaintiffs paid the sum of $85,000.

88.     The allegations in paragraph 88 of the Amended Complaint are denied.

89.     The allegations in paragraph 88 of the Amended Complaint are denied.

## SEVENTH CAUSE OF ACTION
### Declaratory Judgment of Non-Infringement of Trademarks
### (Against All Defendants)

90.     Defendants MySQL AB, David Axmark and Michael Widenius adopt and incorporate by reference their answers to paragraphs 1 through 89 as if set forth fully herein in response to paragraph 90 of the Amended Complaint.

91.     Answering paragraph 91, Defendants admit that there is an actual controversy with respect to the Plaintiffs' liability for infringement of MySQL AB's trademark. Defendants deny the remaining allegations contained in paragraph 91.

92.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters alleged in paragraph 92 and accordingly, deny same.

93.     The allegations in paragraph 93 are denied.

498376_1                                    24

## EIGHTH CAUSE OF ACTION
### Violation of 15 U.S.C. § 1125(a)
### (Against Defendant MySQL AB)

94.    MySQL AB adopts and incorporates by reference its answers to paragraphs 1 through 93 as if set forth fully herein in response to paragraph 94 of the Amended Complaint.

95.    The allegations in paragraph 95 of the Amended Complaint are denied.

96.    The allegations in paragraph 96 of the Amended Complaint are denied.

97.    The allegations in paragraph 97 of the Amended Complaint are denied.

98.    The allegations in paragraph 98 of the Amended Complaint are denied.

## NINTH CAUSE OF ACTION
### Violation of M.G.L. c. 93A § 11
### (Against All Defendants)

99.    Defendants MySQL AB, David Axmark and Michael Widenius adopt and incorporate by reference their answers to paragraphs 1 through 98 as is set forth fully in response to paragraph 99 of the Amended Complaint.

100.    The allegations in paragraph 100 of the Amended Complaint are denied.

101.    The allegations in paragraph 101 of the Amended Complaint are denied.

102.    The allegations in paragraph 102 of the Amended Complaint are denied.

## AFFIRMATIVE DEFENSES

1.    The Amended Complaint fails to state any claim against Defendants upon which relief may be granted.

2.    Plaintiffs' claims are barred by their fraudulent and otherwise wrongful conduct with respect to the claims and allegations asserted in the Amended Complaint.

3.    Plaintiffs' claims are barred by the doctrine of unclean hands.

4.    The Court lacks jurisdiction of the claims asserted in the Amended Complaint against these Defendants.

5.    Without waiver of the requirement that Plaintiffs prove the elements of each and every element of their claims, Plaintiffs' claims are barred by the absence of any legally cognizable "damages" proximately caused by the Defendants.

6.    Plaintiffs' claims are barred by limitations.

7.    Plaintiffs' claims are barred by laches.

8.    Plaintiffs' claims are barred by estoppel.

9.    Plaintiffs' claims are barred by the law of waiver.

10.    Plaintiffs' claims against David Axmark and Michael Widenius are barred because Messrs. Axmark and Widenius only acted in their official capacities as representatives of MySQL AB.

498376_1                                                26

11.     Defendants adopt and incorporate by reference such defenses as may be asserted by any other party hereto, to the extent applicable to these Defendants.

12.     Defendants reserve the right to rely upon any defenses available in law or in fact and reserve the right to amend their Answer accordingly.

WHEREFORE, having answered Plaintiffs' Amended Complaint, Defendants MySQL AB, David Axmark and Michael Widenius respectfully request that the Court dismiss Plaintiffs' claims against these Defendants with prejudice and award to these Defendants their costs and reasonable attorneys' fees incurred in responding to the claims which have been asserted by Plaintiffs in bad faith and for improper purposes, as set forth more fully in the Counterclaim.

<u>DEMAND FOR JURY TRIAL</u>

Counter-Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

Gary C. Crossen, Esquire  (BBO #106580)
Brendan Mitchell, Esquire (BBO #633835)
RUBIN & RUDMAN, LLP
50 Rowes Wharf
Boston, Massachusetts 02110
(617) 330-7036
*Counsel for Defendants MySQL AB,*
*David Axmark and Michael Widenius*

Counsel Admitted Pro Hac Vice:

William F. Ryan, Jr.
Lisa A. Kershner
Ilana Subar
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, MD  21202-1626
(410) 347-8700
 *Co-Counsel for Defendants MySQL AB,*
*David Axmark and Michael Widenius*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _22 nd_ day of February, 2002, a copy of

the foregoing Answer of MySQL AB, David Axmark and Michael Widenius to the

Amended Complaint was served by first class mail, postage prepaid to:

> Peter Brown
> Catherine M. McGrath
> Mark Schonfeld
> Andres N. Madrid
> Brown, Raysman, Millstein, Felder & Steiner, L.L.P.
> 900 Third Avenue
> New York, NY  10022
>
> *Attorneys for Plaintiffs, Progress Software Corporation
> and NuSphere Corporation*

Brendan Mitchell

*1407126*

498376_1