UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PROGRESS SOFTWARE CORPORATION and NUSPHERE CORPORATION,

Plaintiffs,

-versus-

MYSQL AB, T.C.X DATAKONSULT AB, DAVID AXMARK, MICHAEL WIDENIUS, and JOHN DOE CORPORATION,

Defendants.

Civil Action No. 01-11031 PBS

FILED
Clerk's Office
USDC, Mass.
Date 2/25/02
By [illegible]
Deputy Clerk

# PLAINTIFFS' SURREPLY IN FURTHER OPPOSITION TO MYSQL AB'S MOTION FOR A PRELIMINARY INJUNCTION

PETER BROWN
CATHERINE M. MCGRATH
MARK SCHONFELD (BBO 446980)
ANDRES N. MADRID
BROWN RAYSMAN MILLSTEIN
FELDER & STEINER LLP
900 Third Avenue
New York, New York 10022
Telephone: (212) 895-2000

Attorneys for Plaintiffs,
PROGRESS SOFTWARE CORPORATION and
NUSPHERE CORPORATION



# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

POINT I

MYSQL CANNOT PREVAIL ON ITS NEWLY MINTED CONTRACT THEORIES ..... 3

A. MySQL Is Not Exempt From The Copyright Act's Registration Requirement, And Is Not Relieved Of Its Burden To Prove Ownership And Copyrightability ..... 3

B. MySQL Has Not Shown Irreparable Injury ..... 6

C. MySQL Has Not Shown A Breach Of The GPL ..... 7

D. NuSphere's Alleged Breach Was Temporary And Its "Cure" Was Complete And Voluntary ..... 8

POINT II

MYSQL CANNOT PREVAIL ON ITS TRADEMARK CLAIM ..... 9

CONCLUSION ..... 11

## TABLE OF AUTHORITIES

### CASES

Acorn Structures, Inc. v. Swantz,
846 F.2d 923 (4th Cir. 1988) ........ 5

Computer Assoc. v. State St. Bank & Trust,
789 F. Supp. 470 (D. Mass. 1992) ........ 6

National Car Rental Sys., Inc., v. Computer Assocs. Int'l, Inc.,
991 F.2d 426 (8th Cir. 1992) ........ 5

ProCD, Inc., v. Zeidenberg,
86 F.3d 1447 (7th Cir. 1996) ........ 4, 5

Q Division Records, L.L.C., v. Q Records, Inc.,
2000 U.S. Dist. LEXIS 1773 (D. Mass. 2000) ........ 10

Quincy Cablesystems, Inc., v. Sully's Bar, Inc.,
650 F. Supp. 838 (D. Mass. 1986) ........ 3

SQP, Inc. v. Sirrom Sales, Inc.,
130 F. Supp. 2d 364 (N.D.N.Y 2001) ........ 2, 9

### STATUTES

17 U.S.C. § 101 ........ 3, 7

### MISCELLANEOUS

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights, § 7.16[B][1][b], at 160 n.83.1 (2001) ........ 3

## PRELIMINARY STATEMENT

Notwithstanding its lengthy reply papers in which it abandons its initial copyright and trademark theories, MySQL fails to meet its burden on its motion for a preliminary injunction. The deficiencies in MySQL's showing range from the most basic, such as its failure to show ownership of the copyrights and trademarks at issue, to the most central, such as its failure to show that it will be irreparably injured either by NuSphere's use of the publicly available MySQL Program, or by NuSphere's exercise of the trademark rights that it bought pursuant to the Agreement. In short, MySQL fails to refute the showing made on their opposition in which Progress and NuSphere established that:

> <u>MySQL's copyright infringement claim fails</u> (1) because MySQL has not registered any copyright rights and cannot show sufficient ownership of the Program; (2) because NuSphere did not breach the GPL or "lock up" the MySQL Program by packaging it with Gemini; (3) because any alleged breach of the GPL was immaterial and excusable and was entirely cured when NuSphere distributed the source code for Gemini under the GPL; and (4) because neither the GPL nor equity bars NuSphere from using the MySQL Program in parity with the world at large.
>
> <u>MySQL's trademark infringement claim fails</u> (1) because NuSphere's use of the combination marks, such as NuSphere MySQL, is authorized by the Agreement; (2) because NuSphere's non commercial web site at "mysql.org" was a fair use, but in all events is no longer an issue in this action; and (3) because MySQL has not shown that it has any rights in the word "Advantage" or that NuSphere's use of the word in connection with its "NuSphere MySQL" product is likely to cause confusion.

In response to this showing, MySQL makes a series of unfounded and unavailing arguments, but most notably argues that the defects in its copyright claim are of no moment because it is pursuing a contractual right. In abandoning its copyright infringement theory, MySQL abandons copyright presumptions and remedies and renders the arguments in its

opening brief meaningless. What is left is a claim by MySQL that, as a result of NuSphere's alleged breach of the GPL, MySQL is owed money damages measured as the fees owed for a "commercial" use under MySQL's commercial license scheme. By MySQL's new argument, all that is in dispute is a fee in the range of $7,000-$16,000.

Likewise, MySQL's reply demonstrates that its trademark claim is at heart a contractual dispute turning on whether the Agreement by which MySQL sold the relevant trademark rights, including the right to register the combination marks, was a permanent grant as Progress and NuSphere contend, or whether the rights were temporary and contingent upon further payments as MySQL contends. This, too, is an issue of money damages, because MySQL in essence argues that by continuing to use the marks for longer than three months, NuSphere became obligated to make further monthly payments to MySQL. To the extent that MySQL continues to press a trademark infringement claim, it utterly fails to show any likelihood of confusion.

Moreover MySQL's reply papers underscore the factual disputes typical of contract actions, but inimical to a request for injunctive relief. As the examples discussed herein show, MySQL's factual arguments are false, illogical, unsupported, based on irrelevancies, and lacking in credibility. The very nature of MySQL's arguments confirms that this motion is its tactical attempt to gain an advantage against a former partner, now competitor, and to force a renegotiation of the Agreement in order to satisfy a new investor. But irrespective of motive, MySQL's reply serves only to dramatically underscore that there are many serious, disputed issues of fact in this case; such disputes should be resolved at trial, not on a motion for a preliminary injunction. See, e.g., SQP, Inc. v. Sirrom Sales, Inc., 130 F. Supp. 2d 364, 368 (N.D.N.Y 2001).

## ARGUMENT

### POINT I

### MYSQL CANNOT PREVAIL ON ITS NEWLY MINTED CONTRACT THEORIES

**A. MySQL Is Not Exempt From The Copyright Act's Registration Requirement, And Is Not Relieved Of Its Burden To Prove Ownership And Copyrightability**

MySQL ignores the case law that clarifies that the Copyright Act's registration requirement is a jurisdictional requirement, and that in the absence of a registration this Court does not have jurisdiction to issue the requested copyright injunction. See Quincy Cablesystems, Inc., v. Sully's Bar, Inc., 650 F. Supp. 838, 851 (D. Mass. 1986) (dismissing copyright claim with leave to amend upon registration). Instead MySQL argues that it is exempt from the registration requirement because it is a foreign work protected under the Berne Convention. In so arguing, MySQL ignores the basic tenet that a party seeking to invoke the Berne Convention bears the burden of showing that it is not a United States work. See 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights, § 7.16[B][1][b], at 160 n.83.1 (2001).

MySQL cannot meet that burden because a work published simultaneously in the United States and a member country of the Berne Convention is deemed a United States work for purposes of the Copyright Act. 17 U.S.C. § 101. MySQL establishes that the MySQL Program was published by the release of the Program and its source code to the public, including the United States public, on the World Wide Web.[1] MySQL Initial Brief at 4. This, per force,

[1] Based on information available through public registries, mysql.com is hosted in the United States at IP address 64.28.67.70 at OSDN, a division of VA Software.

constituted simultaneous publication in the United States rendering the MySQL Program a work subject to the Copyright Act.

But even if MySQL were not required to register the MySQL Program before suing for its alleged infringement, the Copyright Act requires that, in the absence of the prima facie proof provided by a registration, MySQL must show ownership and copyrightability of its Program. MySQL has done neither, and, by its own admission, it is not the sole owner of the copyright rights. (Counterclaim ¶ 23; see also Surreply Declaration of D. Britton Johnston dated February 25, 2002, Exh. 2 (reciting that the copyright rights in the MySQL Program are owned by three different companies.)) Among other things MySQL has not proffered written assignments from Monty Widenius or the numerous contributing authors of the MySQL Program. Accordingly, MySQL cannot sue for copyright infringement or invoke the copyright remedy of an injunction.

In the face of these deficiencies, MySQL abandons its copyright infringement theory and recasts its claim as a contract dispute. In so doing, MySQL entirely ignores its earlier statements to the effect that the GPL provides no contractual obligations and no contractual remedies. (Moglen Decl., ¶ 18.) Further, MySQL mischaracterizes the case law that clarifies the circumstances under which a contract claim exists as a separate cause of action not constrained by the Copyright Act. The Circuits that have addressed the issue have stopped short of the proposition urged by MySQL, and the Court in ProCD, Inc., v. Zeidenberg, 86 F.3d 1447 (7th Cir. 1996), specifically cautioned that it would not be appropriate to create a blanket rule that the existence of a contract entitles the parties to ignore the Copyright Act:

> [A]re rights created by contract "equivalent to any of the exclusive rights within the general scope of copyright"? . . .
>
> [W]e think it prudent to refrain from adopting a rule that anything with the label "contract" is necessarily outside the

> preemption clause: the variations and possibilities are too numerous to foresee.

Id. at 1454-1455. Here, the rights at issue are distribution rights -- which are copyrights rights -- and MySQL itself contends that there are no rights "created by contract" under the GPL. (Moglen Decl., ¶ 18.) It would, therefore, defeat the purpose of the Copyright Act to allow MySQL to avoid the Act's requirements, yet avail itself of copyright presumptions and remedies.

None of the cases cited in MySQL's reply brief hold to the contrary. The cases discussed at length in MySQL's reply deal primarily with contracts that impose restrictions on use, which is not a copyright right, or concern protection of matter that is not copyrightable. Such matters are by definition qualitatively different from copyright claims. For instance:

> ProCD finds that contractual restrictions on a consumer's use of the database included in the plaintiff's product are enforceable; databases are not copyrightable and thus fall outside the scope of the Copyright Act. ProCD, 86 F. 3d at 1453-1455.
>
> Acorn finds that contractual restrictions on the customer's use of the ideas reflected in an architect's drawing are enforceable; the ideas inherent in the drawing are not copyrightable and thus fall outside the scope of the Copyright Act. Acorn Structures, Inc. v. Swantz, 846 F.2d 923, 925-926 (4th Cir. 1988).
>
> National Car Rental finds that there is a qualitative difference between distribution rights, which are copyright rights, and restrictions on use, which are not; a contract restricting use is not preempted because it creates a right not existing under copyright law. National Car Rental Sys., Inc., v. Computer Assoc. Int'l, Inc., 991 F.2d 426, 431 (8th Cir. 1992).

Here, in contrast, the GPL expressly provides that it places no restrictions on how the Program is "used."

In sum, MySQL is not entitled to a copyright remedy -- an injunction -- because it has not met the requirements for bringing a copyright claim.

**B. MySQL Has Not Shown Irreparable Injury**

In its opening brief, MySQL invoked copyright law, copyright presumptions, and copyright remedies. In apparent recognition that it cannot pursue its copyright theories, MySQL in its new brief recasts its claim as one for breach of contract, the remedy for which is a license fee under MySQL's commercial license scheme. As set forth in Britt Johnston's surreply declaration, those fees are in the range of $7,000-$16,000.[2] What MySQL fails to acknowledge, however, is that, by abandoning its Copyright theory, MySQL strips itself of all the copyright presumptions that it asserted in its initial brief. As the Court made clear in Computer Assoc. v. State St. Bank & Trust, 789 F. Supp 470 (D. Mass. 1992), a case upon which MySQL relies, there is no presumption of irreparable injury where a claim is based on breach of a license rather that copyright infringement.[3] To the contrary, the Court found that the operative concern was the potential injury to the allegedly breaching party were it prevented from continuing to use the licensed computer program pending the outcome of the trial. Under these principles, MySQL has shown no irreparable injury. To the contrary, NuSphere's showing that the requested injunctions would put it out of business is the factor that governs with the result that no injunction should issue.

---

[2] Mr. Johnston calculates approximately $7,000 in licensing fees using a license fee schedule in effect in June 2001. Under MySQL's license fee schedule current as of last week, the licensing fees would be approximately $16,000.

[3] The Computer Assoc. case is also instructive for its holding that where questions are not answered by the terms of the contract, the court may supply a term that prevents one party from being in a position of "economic servility" or "completely at the mercy of the other." Computer Assoc., 789 F. Supp at 476. Here MySQL argues that because the GPL is silent as to cure, no cure is possible. Under Computer Assoc., the opposite would be true; a right to cure would be inferred because otherwise MySQL would hold allegedly breaching parties "at its mercy."

## C. MySQL Has Not Shown A Breach Of The GPL

Progress and NuSphere establish, and MySQL does not refute, that Gemini was a pre-existing work that functions independently of the MySQL Program, and that the GPL imposes no obligations on such "works" merely because they are aggregated with GPL works. (GPL ¶ 2.) Accordingly, to prevail, MySQL must overcome NuSphere's showing that the NuSphere MySQL package was an aggregation of separate works. MySQL would have to show, but has not shown, that Gemini somehow lost its character as a separate work and became a mere modification to the MySQL Program[4] once the works were compiled for the convenience for the user.

In its initial papers, MySQL rested on an erroneous argument that the combined programs became a "work based on the MySQL Program" solely by virtue of the fact that the programs were linked together in an "executable" or "ready to use" format. In response to NuSphere's strong showing that the character of software as a "work" turns on its function and character rather than on the method by which it communicates with other programs, MySQL has now changed its argument. In its reply, MySQL contends that the aggregated programs became a single work because they allegedly could not be operated independently of each other or disassociated by the user.

If this is the test, MySQL's claim of breach fails. In fact the programs are severable, they can and do operate independently. This point is amply made in forceful detail by

4 The GPL defines the term "a work based on the Program" to mean a "derivative" work as that term is defined under the copyright laws. In pertinent part, 17 U.S.C. § 101 states:

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

Bruce Webster, NuSphere's expert, and by Britt Johnston's initial and surreply declarations. (Johnston Surreply Decl. ¶ 10.)

**D.  NuSphere's Alleged Breach Was Temporary And Its "Cure" Was Complete And Voluntary**

MySQL has not refuted NuSphere's showing that it "cured" any alleged "breach" quickly and completely by releasing Gemini under the GPL, posting Gemini source code on the nusphere.com web site, and distributing the source code to its customers. MySQL nonetheless makes a reckless and erroneous claim that NuSphere did not "cure" and has no intention of curing the alleged breach of the GPL because it continues to impose a restrictive license for Gemini -- in fact NuSphere has not used the restrictive license for nearly a year now. (Johnston Surreply Decl. ¶ 6.)

Likewise, MySQL makes a reckless and erroneous claim that the recipients of the non-GPL version of Gemini have not received Gemini source code; in fact NuSphere has long since distributed both the GPL and the Gemini source code to the recipients of the initial, allegedly restrictive version of NuSphere MySQL. (Johnston Surreply Decl. ¶ 6.)

MySQL paints a false picture when it claims that NuSphere acted to "cure" its alleged violation of the GPL only after this action was commenced. First, NuSphere itself commenced this action seeking a declaration of its rights.

Second, MySQL does not overcome NuSphere's detailed showing that it manifested an intent to release Gemini's source code long before this dispute arose, and that MySQL is the party that interfered with the orderly release of Gemini under the GPL. MySQL argues, for instance, that NuSphere did not release the Gemini source code to the public in January 2001 by delivering it to MySQL for inclusion in the development tree (or source

repository) on the mysql.com web site because access to that web site was limited. However, as shown in Britt Johnston's surreply declaration, NuSphere was aware that the access for purposes of changing the code was limited, but believed, and still believes, that the code was available for public viewing and downloading. (Johnston Surreply Decl. ¶ 2.)

Moreover, NuSphere established that MySQL knew about NuSphere's plan to use separate marketing channels for a GPL and a non-GPL version of Gemini, and had to know of the non-GPL release well in advance because Michael Widenius was involved in the strategy and execution of the release. In its reply MySQL denies that knowledge, leaving a dispute about what was said and known, and when it was known. As with the other sharp disputes of fact, discovery and a trial are required to resolve this issue. SQP, 130 F. Supp. 2d at 368.

## POINT II

## MYSQL CANNOT PREVAIL ON ITS TRADEMARK CLAIM

In their opposition, Progress and NuSphere established that MySQL's trademark claims are moot because NuSphere has transferred to MySQL the disputed domain names, including "mysql.org" and has taken down the non-commercial web site that it had operated under that domain name in anticipation of transferring the site to a not for profit foundation. Accordingly, all that remains is a dispute as to whether the Agreement by which all other trademark uses at issue are authorized was permanent or temporary. NuSphere established that MySQL always recognized that the rights were permanent and fully paid for until new investors brought pressure on MySQL to renegotiate the terms of the Agreement.

In its reply, MySQL essentially concedes that its trademark claim is in reality a contract dispute. Its reply consists mainly of an argument that parole evidence shows that the parties have each referred to the Agreement as "interim." In this respect, MySQL's showing is

insufficient -- the parties never referred to the rights under the Agreement as "temporary" or treated them as such in their course of conduct. Among other things, MySQL entirely ignores the fact that it happily countenanced NuSphere's use of the combination marks long after the supposed expiration of the Agreement, and in fact helped to extensively publicize NuSphere MySQL by running NuSphere's banner advertisements and making frequent references to NuSphere MySQL throughout the MySQL web site.

In what seems to be a desperate attempt to salvage its claim that a pure trademark issue remains, MySQL argues that NuSphere's use of "NuSphere MySQL Advantage" exceeds the scope of the rights granted under the Agreement. Even if that were true, it remains the case that MySQL has made no attempt to show proprietary rights in the word "advantage," or to show that NuSphere's use of the word causes confusion. The third party declarations that MySQL tries to resurrect are relevant only to the ".org" issue, which is moot. No injunction can properly issue where there is such a gaping lack of proof of confusion. See Q Div. Records, L.L.C., v. Q Records, Inc., 2000 U.S. Dist. LEXIS 1773 (D. Mass. 2000). MySQL cannot make up for this deficiency by its conclusory argument that NuSphere is harming MySQL by trading on its goodwill. Among other things, MySQL's argument fails to acknowledge that NuSphere has spent millions of dollars promoting and improving the MySQL Program, and fails to acknowledge that NuSphere, like any other member of the public, is entitled to describe itself as a source for the MySQL Program.

Finally, MySQL's argument that the parties were in ongoing discussions about the Agreement and their overall relationship does not explain why MySQL waited a year from the supposed expiration of the Agreement, and five months after the commencement of this action, to bring this belated motion.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in plaintiffs' opposition papers, Progress and NuSphere respectfully request that the Court deny MySQL's motion for a preliminary injunction in its entirety.

Dated: New York, New York
February 25, 2002

Respectfully submitted,

BROWN RAYSMAN MILLSTEIN
FELDER & STEINER LLP

By: ______________________
PETER BROWN
CATHERINE M. MCGRATH
MARK SCHONFELD (BBO 446980)
ANDRES N. MADRID

900 Third Avenue
New York, New York 10022
Telephone: (212) 895-2000

Attorneys for Plaintiffs,
PROGRESS SOFTWARE CORPORATION and
NUSPHERE CORPORATION

BRMF&S1 297581